FRANCIS H. SMITH AND WILLIAM A. TALBOTT, *vs.* JAMES L. L. DONNELL, EX'CR OF SUSAN PARKER.—*June* 1850.

A testatrix devised by her will, the residuum of her estate to her nephews and nieces, "share and share alike." Subsequent to the execution of this will, she advanced large sums of money to one of the residuary legatees, who, prior to the death of the testatrix, received the benefit of the insolvent laws, and his permanent trustee was duly appointed. HELD:

That in paying this legacy, the executor had the right and was bound to discount therefrom the loans made to the legatee by testatrix subsequently to the date of her will, and this balance alone passed to and could be recovered by the trustee in insolvency.

Under the fifth section of the act of 1805, ch. 110, no more of a devise or bequest could be obtained by creditors, than could have been obtained by them if no insolvent discharge had intervened. The devise vested not in the trustee, but remained in the insolvent debtor, subject to the race of diligence on the part of his creditors.

The second section of the act of 1834, ch. 293, designed to accomplish nothing but to put an end to this race of diligence amongst creditors, by transferring to the trustee such rights as would otherwise have remained in the insolvent, and thus secure an equal distribution of his property.

APPEAL from the orphans court of *St. Mary's* county.

*Susan Parker* died in 1848, leaving a will, executed on the 27th of February, 1843, by which, after sundry legacies, she declared: "It is further my will and desire, that the rest and residue of my estate and property, after satisfying said gifts and bequests as aforesaid, shall be divided among such of my nephews and nieces, the children of my brother *Isaac*, and of my deceased brother *Charles*, and sisters *Margaret* and *Sally*, as shall be living at the time of my death, that is to say, to each nephew and niece, share and share alike."

On the 17th of *September*, 1849, the appellee, her executor, filed a petition in the orphans court, stating that he had paid the debts and had a balance of the estate in his hands for distribution; that *Francis H. Smith*, one of the residuary legatees in the will, was, at the time of the death of the testatrix, indebted to her for money advanced from time to time, in the sum of $8,000. That subsequent to said advances, viz: in January, 1846, said *Smith* became an applicant for the benefit of the insolvent laws, and received his final discharge on the 21st of August, 1846, and that *William A. Talbott* was appointed his permanent trustee. That said *Smith* would be entitled to about $1,000, as his distributive share of said personal estate, but that petitioner is advised that he ought not to pay over any part of this sum to him, but that the same should be set off against an equal amount due by him as aforesaid to the estate of said *Susan*.

The answer of *Smith* admits the facts stated in the petition, but claims to have been discharged from his debt to the testatrix, under his application for the benefit of the insolvent laws.

The answer of *Talbott* relies upon the same defence and claims, that he, as such trustee, is entitled to receive whatever portion of said estate *Smith* may be found entitled to, and that the executor cannot apply such portion to the payment of a debt, which said *Smith* is not in any way bound to pay or liable for.

The orphans court was of opinion, that the executor ought not to pay over any portion of said estate to *Smith* or to *Talbott*, as his trustee, until the debt due by *Smith* to the testatrix shall have been fully satisfied and decreed accordingly. *Smith* and *Talbott* appealed.

The cause was argued before DORSEY, C. J., MAGRUDER and FRICK, J.

By TALBOTT for the appellants, and
By KEMP for the appellee.

DORSEY, C. J., delivered the opinion of this court.

The testatrix in this case made her will in 1843, and after giving a few legacies to other persons, gave the rest and residue of her estate to certain of her nephews and nieces, "share and share alike." After the making of her will, and before the year 1846, she made loans of sundry sums of money to *Francis H. Smith*, one of the appellants, and also one of her nephews and residuary legatees. She died in 1848, leaving her will in full force. In 1846, *Francis H. Smith* obtained the benefit of the insolvent laws of *Maryland*, and *William A. Talbott* was duly appointed his permanent trustee, and the only question we are called on to decide is, shall this trustee receive the full amount of the legacy to the insolvent, without any deduction therefrom of the loans made to him by the testatrix? But for the insolvent discharge of the legatee, there cannot be a doubt, either upon reason or authority, that the executor of the testatrix, upon the legatee's insolvency in point of fact, would have had a right, in paying the legacy, to have set off therefrom the loans to the legatee. In arriving at the intention

of the testatrix in the construction of her will, in reference to the bequest in question, we are bound to assume, that she knew that in paying the legacy to the insolvent legatee, her executor had the right, and was in duty bound to discount from the legacy any loans she might make to the legatee, subsequently to the date of her will. In construing her will, therefore, we must presume it to have been her intention, at the time of its execution, that such deduction, if an occasion for it arose, should be made. Every principle of natural justice and reason would rise up in opposition to the assertion of the principle, that an assignee of this legacy should hold it discharged from this right of set off. Unless contravened by some clear and positive provisions of law, the bounty of the testatrix must be accepted pursuant to her apparent intention, as collected from the face of the will. That such intention would not be violated by gratifying the claim of the appellant, credulity itself cannot believe. The will, in the most explicit terms, declaring, that the "rest and residue" of the estate of the testatrix shall be divided amongst the specified nephews and nieces, "to each share and share alike." According to the principles contended for by the appellants, the nephew, *Smith,* after receiving from the testatrix in her lifetime the full amount of his legacy, is again to receive through his trustee the same amount, to the manifest prejudice of his co-legatees. If the provisions of the will itself had not excluded all such construction of the testatrix's will, the nature of the case would, unquestionably, do so. In giving this legacy, who was the peculiar object of the testator's bounty? The legatee himself. Can any rational mind be induced to believe, that it was intended that the legatee, in the event of his receiving and enjoying the legacy, could only take that which was given him in express terms by the will, but if his legacy were transferred to his creditors, in the event of his insolvency, that they, notwithstanding the legacy had been previously fully satisfied by loans made to the legatee by the testatrix in her lifetime, should receive the entire amount of the legacy, in the same manner as if no previous satisfaction of it had ever been made to the legatee?

And from what fund is it that this payment to the creditors is to be made? Out of that which she has most unequivocally given to her co-residuary legatees, her nephews and nieces. To perpetrate such an act of flagrant injustice, no court of justice could be induced to lend its sanction, unless controlled by the clearest expression of the legislative intent, evinced by the most explicit mandates of its enactments. Every rational presumption ought to be raised against the existence of any such design in the legislature, and the court should go to the extreme verge of rational, legitimate, interpretation, to rescue the legislature from the imputation of such a design.

Let us see, then, what are the legislative provisions to which this extraordinary operation is sought to be attached. The first is, that in the fifth section of the act of 1805, chap. 110, which provides, "That any property which he, (the insolvent debtor,) shall hereafter acquire by gift, descent, or in his own right, by bequest, devise, or in any course of distribution, shall be liable to the payment of the said debts." Under this act of Assembly it is conceded, as it must be, that no more of such devise or bequest could have been reached or obtained by the creditors of the insolvent, than would have been obtainable by them had no such insolvent discharge intervened. · That the devise or bequest vested not in the trustee, but remained in the insolvent debtor, subject to the race of diligence on the part of his creditors. To carry out the design of our insolvent system, which is equality of distribution of the effects of the insolvent amongst all his creditors, the second section of the act of 1834, chap. 293, was passed, which designed to accomplish nothing, but to put an end to this race of diligence amongst creditors, by transferring to the trustee such rights as would otherwise have remained in the insolvent, and thus secure an equal distribution of *his* property, (not the property of other persons,) amongst all his creditors. Sustain the doctrine contended for by the appellants, and although, in the event of a testator's death, a legatee, insolvent in fact, would not be entitled to receive one farthing of the legacy bequeathed to him; yet, if he chance to have been discharged under our insolvent laws,

his trustee would have a right to compel payment to him of the entire amount of the legacy bequeathed out of the property of the testator, given by his will to his other legatees or distributees. That it was the design of the legislature, in passing the act of 1834, thus to violate the intention of the testator and commit such an outrage upon the rights of others, contrary to every principle of reason, justice and expediency, cannot be imputed to it, if its enactment be susceptible of any other interpretation. That the legislature designed the perpetration of no such enormity, is apparent from its language. It enacts, "that in all cases of application, that shall hereafter be made for the benefit of the insolvent laws, under the act to which this is a supplement, or any of the supplements thereto, or under the act passed at November session of the year 1805, chap. 110, entitled, 'An act for the relief of sundry insolvent debtors,' or any of the supplements thereto, all the property within the intent of the fifth section of the said act, passed at November session of the year 1805, chap. 110, that shall be acquired by or accrue to the insolvent debtor, by gift, descent, or in his own right, by bequest, devise, or in any course of distribution, shall be deemed and so distributed, and applied as estate of said insolvent debtor for the benefit of his creditors." What was acquired by or did accrue to the insolvent by the death of the testatrix, under the fifth section of the act of 1805, chap. 110? The balance, if any, of his legacy remaining due after deducting therefrom the loans made to him by the testatrix. This is the plain and obvious import of the second section of the act of 1834, and that it accords with the design of the legislature in its passage, human ingenuity cannot create a rational doubt. The doctrine, that in chancery equitable set offs will be allowed, where reason and justice require it, although not authorised by any statutory enactment, is so fully established, as to render unnecessary references to adjudications on the subject. But, if they are desired, they may be found in *Lindsay vs. Jackson*, 2 *Paige*, 581, and 2 *Wms. on Ex'crs*, 810, 811.

The decree of the orphans court is affirmed with costs, both in this court and in the court below.

v.9          DECREE AFFIRMED WITH COSTS.