MARY HOFFMAN et al., Executors of JOSEPH T. HOFFMAN *vs.* ALEXANDER ARMSTRONG and J. A. MASON, Permanent Trustees of EDWARD HOFFMAN et al.

*Executors and Administrators—Re-Opening Distribution Accounts —Erroneous Distribution of Property to Insolvent Legatee Indebted to the Estate—Rights of Purchasers—Liability of Executors for Failure to Collect Indebtedness of Legatee—Practice.*

An account was stated in the Orphans' Court and ratified by which certain shares of stock and other property were distributed to a legatee who was indebted to the estate and who was insolvent. The shares of stock were received by his trustees in insolvency, and by them sold and transferred to *bona fide* purchasers for value who had no notice of the rights of the executors against the insolvent, *Held*, that the account should not be restated so as to allow the executors· to make claim for the property thus received and disposed of by the trustees, but the trustees are not entitled to receive any further distribution on account of the insolvent's distributive share until his indebtedness to the decedent's estate is satisfied.

The fact that a party has a right to appeal from an order of the Orphans' Court re-opening a distribution account does not preclude him from filing a petition in the Orphans' Court to annul the order of ratification, if done within the time he could have appealed.

The appointment as executor of a person indebted to the testator's estate does not operate to extinguish the debt; and where one of the executors, also a legatee, was the surviving partner of the testator, and as such indebted to his estate, it is the duty of the executors to deduct from his distributive share the amount of such indebtedness.

When the failure to collect from a legatee the amount of his indebtedness to the estate is owing to the negligence of the executors, they are chargeable with the amount thereof.

The same person was an executor of a will and a legatee thereunder, and also one of the trustees in insolvency of another legatee who was indebted to the testator, and to whom over-payments had been made by mistake. *Held*, that since such person's interests as distributee and executor were in conflict with his duty as trustee in insolvency, he should have asked the insolvent Court to discharge him as trustee, but when this was not done the Court properly acted at the instance of the other trustees.

Appeal from an order of the Orphans' Court of Washington County, directing that the third account referred to in the opinion of the Court as restated on November 8, 1898, and approved Nov. 15th, be set aside and annulled, and that the third account as originally stated on Nov. 17th, 1896, be again approved, except as to the item of household articles and dividends of the Hagerstown Machine Company, and that the executors be not allowed to retain any of the property to which Edward Hoffman or his legal representatives may be entitled on account of any alleged indebtedness from said Edward Hoffman to the estate.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and BOND, JJ.

*Wm. H. A. Hamilton* and *J. Clarence Lane*, for the appellants.

*J. A. Mason* (with whom was *Alex. Armstrong*, on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

It will perhaps simplify the questions raised by this appeal to make a somewhat full statement of the facts.

Joseph T. Hoffman appointed his wife, Mary Hoffman, and his three eldest sons, Charles W., Edward and Ernest, executors of his last will and testament, which was proven in the Orphans' Court of Washington County in June, 1891. On November 17, 1896, the executors stated their third account in which they distributed certain shares of stock of corporations and some cash to each of the seven children of the deceased. In October, 1897, the three remaining executors (Edward having been removed), filed a petition in the Orphans' Court in which they stated that the above mentioned account was erroneous in that they should have claimed credit for an item of $2,518.36, as a debt due to the estate by Edward Hoffman, as surviving partner of Joseph T. Hoffman & Son—he having converted it to his own use—and that they should have charged themselves with the appraisement of certain furniture, etc., which they inadvertently omitted, and that they should not have made any distribution to Edward, as he was indebted to the estate. They asked that the account should be restated. The Orphans' Court refused to grant their petition and on an appeal to this Court the order was reversed. *Hoffman* v. *Hoffman*, 88 Md. 60.

After the cause was remanded the Court passed an order requiring the children of the testator to answer the petition, which they did, admitting the allegations therein, excepting Worthington W. Hoffman, an infant, whose guardian filed the usual formal answer. Alexander Armstrong and J. A. Mason, two of the permanent trustees of Edward Hoffman, who had been adjudicated an insolvent (Ernest Hoffman being the third trustee), filed a petition asking leave to answer the petition of the executors and the Orphans' Court, passed an order making the trustees of Edward Hoffman parties and granting them, or such of them as desired, leave to answer. The order was doubtless passed in that form, because the petition alleged that Ernest Hoffman was one of the trustees, and also one of the executors. Those two trustees then filed their answer, alleging amongst other

things that the executors had turned over to the trustees of Edward Hoffman the stocks distributed to him in the third account; that they had sold them and distributed the proceeds in the insolvent Court. Testimony was taken and on the 7th day of October, 1898, the Orphans' Court passed an order setting aside the third account of the executors and directed them to restate it, correcting the errors set forth in their petition.

The executors then filed a petition asking that distribution be made under the direction of the Court. An order was passed naming the 26th day of October, 1898, as the day for the distribution and directing a summons to issue for the distributees and the trustees of Edward Hoffman. The record does not show whether the summons was issued or served, but on the 15th day of November, 1898, the third account, as restated, was approved by the Court, and in it the executors charged themselves with some additional personalty, and Edward Hoffman's share was distributed to the executors to be applied in part payment of his indebtedness to the estate—there being $640.31 distributed to each distributee, and there being claimed to be an indebtedness of Edward Hoffman amounting to $1,154.28. The distribution to each distributee included five shares of the Danzer Lumber Company's stock, appraised at $450.00; five shares of Inter-State Hedge Fence Company's stock, appraised at .00; 17 shares of the Hosiery Company's stock, appraised at .00; six shares of the Beaver Creek and South Mountain Turnpike Company's stock, appraised at $30.00, and $160.31 in money. That was, the same distribution made in the original third account, excepting the first only included $40.95 of money to each distributee. On the 22nd day of November, 1898, the two trustees filed another petition in which they stated they were advised that the executors had produced to the Court certain certificates of stock of the Danzer Lumber Company and the Beaver Creek and South Mountain Turnpike Company, in the name of Joseph T. Hoffman; that said certificates did not truly represent the

manner in which the stock stood, but long prior to the time
the account was restated the executors had made distribu-
tion of said stock, and transferred it on the books of the
companies to the heirs and legatees of Joseph T. Hoffman;
that they had no knowledge until after the ratification of the
account that the executors had produced to the Court said
certificates of stock, and they prayed that the account be
re-opened in order that the Court might be advised of the
real circumstances in regard to said stock, etc. The execu-
tors answered the petition, neither admitting nor denying
the allegations therein, but alleging that the account was
restated after testimony had been taken and due considera-
tion by the Court. Testimony was again taken " at hearing
of April 6, 1899." The secretary of the Beaver Creek, etc.,
Company, testified that Joseph T. Hoffman was, at the time
of his death, the holder of forty-two shares of stock in that
company ; and that on the stock-book there was an assign-
ment by the three remaining executors of six shares to each
of the seven children, naming them and including Edward
Hoffman. That transfer was made May 21, 1897, a
certificate was issued to Edward for the six shares, and
afterwards, as attorney in fact for the trustees, the secretary
transferred them, together with four and one-fifth other
shares in the name of Edward Hoffman, to Norman G.
Scott. William G. Danzer, president of the Danzer Lum-
ber Company, testified that on or about January 2, 1897,
the executors produced a certified copy of the order of the
Orphans' Court, dated November 17, 1896, directing the
stock held by Joseph T. Hoffman in that company to be
transferred, and on that day a certificate for five shares was
issued to Edward Hoffman, at the request of the executors,
which was afterwards transferred by the trustees to the
People's National Bank.

On the 18th day of April, 1899, the Court passed an
order setting aside and annulling the said third account,
approved on November 15th, 1898, and again ratifying the
third account as originally stated on the 17th of November,

1896, excepting as to the item of household articles and distribution of the Hagerstown Steam Engine and Machine Company, as to which the executors were directed to state a further account.   An opinion was filed by the Court in which they gave their reasons for their action.   In it they state that inasmuch as there had been a mistake in the original third account, as to the household furniture, they determined to re-open it " and informed the executors, their counsel being present (but out of the presence of the said trustees or their counsel), that they must produce the true certificates showing in whose name said shares of capital stock were issued, as mentioned in said third account.   This the counsel for the executors agreed to do, and upon this understanding we passed the order of October 7th, 1898.   Upon November 8th, 1898, the executors restated said third account, but this Court would not approve the same for the reason that the executors had not produced said certificates; however, between the 8th and 15th of November, 1898, they did produce in this Court certificates of shares of said stock which stood in the name of the decedent, Dr. Joseph T. Hoffman, and this Court ratified said third account as restated.   After its restatement we informed the counsel for the said two insolvent trustees, as we saw, to do justice and right, we should have notified them before ratifying said third account as restated."

The executors originally charged themselves with $2,518.36, as the appraised value of property of the firm of Joseph T. Hoffman & Son, and certainly as early as when the second account was passed, on the 10th day of March, 1893, Edward Hoffman had sold that property, yet he was paid his distribution of $1,577.32, and when the third account was stated in November, 1896, they obtained credit for the whole of the $2,518.36, as "not disposed of"—two of the three executors swearing that " the foregoing account as stated is just and true."  So long as Edward Hoffman was receiving the distributions no question seems to have been raised as to his right to do so, and the Court was not only

not informed that he was indebted to the estate, but the action of the executors was calculated to lead it to believe he was not indebted as surviving partner, as they stated the property was not disposed of. In the meantime the rights of innocent parties have intervened, and so far as they are concerned, it would seem to be clear that the executors are not entitled to relief merely for their own protection. Although it has been decided in many cases, including that of *Hoffman* v. *Hoffman, supra,* that the Orphans' Court has the power to re-open accounts of executors and administrators and correct errors therein, that power should be very cautiously exercised if there be danger of thereby prejudicing the rights of parties who have innocently acted under the account, as originally stated. In the case before us, the stock distributed to Edward Hoffman was delivered to his trustees and sold by them. Neither of these two trustees nor the purchasers are shown to have had notice of any claim that was held by the executors against the stock. The purchasers paid for it and the companies in which it was held issued new certificates of stock to them, and the proceeds were distributed by the trustees. Under such circumstances it would be manifestly unjust to restate the account at the instance of the executors to enable them to make a claim against innocent persons who have been led into the transaction by the act of the executors themselves.

The Orphans' Court ought not under such facts to have approved the account which was restated in November, 1898, and, as is shown by their opinion, when they found they had done so under a misapprehension of the facts, which was occasioned by the production of the certificates in the name of Joseph T. Hoffman, without the knowledge of the trustees, they very properly granted the petition of the trustees to set aside and annul their former order ratifying that account—especially when they ascertained that they had not been correctly informed as to the true *status* of the stock.

It is true that the trustees might have appealed from the

order ratifying that account, but as they filed their petition within the time they could have appealed, there was no question about the right of the Orphans' Court to act on it. The fact that no appeal was taken from the order of October 7, 1898, cannot affect their right to object to the account after it was restated.. So much of the order passed April 18, 1899, as set aside and annulled that account, which was approved November 15, 1898, was therefore properly passed.

The order, however, also provided " that · the executors are not allowed to retain in any manner in their hands any of the distribution to which Edward Hoffman or his legal representatives might be entitled on account of any alleged indebtedness from the said Edward Hoffman to the estate." In that there was error. It was undoubtedly the duty of the executors to deduct from the distributive share of Edward Hoffman in his father's estate any indebtedness due by him to it. By section 224 of Art. 23, it is provided that " the bare naming an executor in a will shall not operate to extinguish any just claim which the deceased has against him ; but it shall be the duty of every such executor accepting the trust to give in such claim in the list of debts," and after providing for the method of establishing a claim, against him, if he fails to give in such claim, it further provides " that if the executor shall give in such claim or any part thereof be established, as aforesaid, he shall account for the sum due in the same manner as if it were so much money in his hands, and on failure his bond may be put in suit." Without stopping to discuss the effect of such a provision when there is more than one executor, the statute is explicit in declaring that the fact that such party has been named executor does not operate to extinguish a debt due the deceased, and it is well settled that it is the duty of executors or administrators to retain from the share of a distributee the amount due by him to the deceased. *Smith and Talbott* v. *Donnell*, 9 Gill, 84 ; *Manning* v. *Thruston*, 59 Md. 218. Such right also exists

when the debt has been incurred to the estate itself by the distributee, as administrator, after the decedent's death, *Gosnell, Trustee*, v. *Flack et al.*, 76 Md. 423, and it would seem to be equally clear that such is the case where the indebtedness is from a surviving partner of the deceased who is a distributee. In *Smith and Talbott* v. *Donnell*, *supra*, it was expressly decided that the trustee of an insolvent legatee was only entitled to the balance after deducting the amount due the deceased by the legatee. The insolvent law then in force was as broad as the one under which Edward Hoffman was adjudicated an insolvent, so far as this question is concerned. It was therefore the plain duty of the executors to deduct the amount due by Edward Hoffman from his distributive share in his father's estate, and although, as we have said above, that cannot now be done to the extent of disturbing the distribution, which the trustees in the insolvent proceeding got possession of and disposed of, the executors can deduct from distributions not yet paid over to the trustees any sums due by him. The evidence sufficiently shows that he is indebted to his father's estate, and therefore the order of the Orphans' Court, in so far as it affects distributions not yet made, must be reversed.

As the failure to collect the amount due by Edward as surviving partner of Joseph T. Hoffman & Son was manifestly owing to the negligence of the executors, they should be charged with the amount he owes his father's estate, as well as the appraised value of the household articles, etc., spoken of, and other sums, not accounted for by them. They should not make any further distribution to Edward Hoffman until the distributions to the other distributees are equal to the amount he owes the estate.

It may be well to add that ordinarily all the trustees of an insolvent should unite in petitions or other proceedings in Courts, but as in this case Ernest Hoffman was one of the executors of his father's estate, as well as one of the distributees, and was acting against the interest of the insolvent estate of

his brother Edward, the Court very properly acted at the instance of the other two trustees. The proper course for Ernest Hoffman to have pursued was to ask the insolvent Court to discharge him from further acting as such trustee, as his interests, both as distributee and executor, were in clear conflict with his duties as trustee. Section 12 of Art. 47 of the Code gives the Court ample authority to discharge trustees appointed in insolvent proceedings, as well as to remove them for misconduct.

> *Order passed the 18th day of April, 1899, affirmed in part, and reversed· in part, and cause remanded, the costs in this Court and the Court below to be paid out of the estate.*

(Decided November 24th, 1899).