In the Matter of the Estate of JOHN W. SPICER, deceased.

*Sussex, March 9, 1923.*

Except where changed by statute, upon the death of a person, his personal property vests in his executor or administrator, who takes such property in trust for the payment of the debts of deceased and the distribution of the remainder to his heirs.

An executor is not responsible as an insurer of goods and chattels which come into his possession in his fiduciary capacity, nor is he held accountable for the loss or depreciation of the assets of the estate provided bad faith cannot be imputed and he uses ordinary care and diligence, such as would be exercised by an ordinarily prudent and careful man in the management of his own affairs under similar circumstances.

Where an executor giving bond, under *Revised Code* 1915, § 3348, delayed making the inventory required by *Section* 3365 which was to be filed in the register's office within six months from the granting of letters as required by *Section* 3366, and it appeared that the appraisal of decedent's goods amounted to $1,368.07 and that they were sold at public auction for $417.85, the executor having allowed the widow the use thereof for about ten months, *held* that the executor had not exercised ordinary care and that his account should be surcharged.

Where an executor allowed an open account to be paid in preference to a note, in violation of *Revised Code* 1915 § 3372, providing the order of payment of debts of the deceased by the executor or administrator out of the personal estate, the executor was liable therefor.

It was improper for an executor to allow a widow to buy in all the household goods at public auction offered at one time in mass.

The inventory and appraisement of a decedent's personal estate is generally treated as *prima facie* evidence of the value of the personal estate, but is not conclusive.

If the appraisement of assets was too high and if the household goods purchased by the widow in fact belonged to her, the executor had his remedy under *Revised Code* 1915, § 3370, providing that the register shall have power to order an inventory to be suppressed, or to adjudge the same imperfect, and to order another to be made, and where such course was not taken the widow could not, more than a year from the time of the inventory, make a claim for the household goods.

EXCEPTIONS to the account of The Peoples National Bank of Laurel, Executor of John W. Spicer, deceased. The grounds of exception and facts appear in the opinion of the court.

WOLCOTT, Ch., and RICHARDS J., sitting.

*Daniel J. Layton*, for the exceptants.

*Frank M. Jones*, for the executor.

RICHARDS, J., delivering the opinion of the Court:

John W. Spicer died testate January 2, 1921, the People's National Bank of Laurel being named executor, and letters testamentary were granted to it on January 18, 1921. On the same date upon which letters testamentary were granted, two appraisers were appointed, as required by the statute, who appraised the personal property of the testator on January 21, 1921, at the sum of $1,368.07. Said personal property was sold by the executor at public auction on November 13, 1921, for the sum of $417.85. The inventory and appraisement and list of sales were filed in the office of the Register of Wills on January 13, 1922, and the first administration account was passed before the Register upon the same date. Execeptions to the account were filed in this court by Charles W. Spicer, Thomas C. James and Thomas R. Purnell, creditors, the causes for exception being, as follows:

1. That an automobile appraised at $450.00 was allowed to be used from January to November, 1921, when it was sold for $115.00.

2. That a wheat binder appraised at $90.00 was allowed to be used for the same period, when it was sold for $56.00.

3. That certain corn, potatoes, hogs and paint, all appraised at $147.50, were consumed, wasted and never accounted for.

4. That a pair of mules, appraised at $275.00, were allowed to be used for the said period, and sold for $140.00.

5. That certain baskets were lost and otherwise wasted.

6. That the widow was permitted to buy in all of the household goods offered in mass at the sum of $27.00.

7. That goods appraised at $1,386.70 were turned over to Mrs. Spicer, the widow, and kept by her for the period aforesaid, returned to the executor and sold for $417.85.

8. That an open account of $17.07 was paid to E. E. Wooten and Son in preference to demands of a higher grade.

The exceptants contend that the executor in the present case not only has failed to. comply with the statute law of this state governing the settlement of decedents' estates, but that he has neglected to exercise that degree of care and diligence which it is the duty of an executor to exercise in the settlement of an estate.

The executor contends that during the entire time it was engaged in the settlement of the estate, it was acting in good faith, its course was inspired by its desire to do that which would. be most helpful to all persons interested in the estate, and by which the greatest amount would be realized from the property.

Under the ancient common law the title to personal property left by a deceased person vested absolutely in his executor or administrator, and any surplus remaining after payment of the charges of administering the estate, debts and legacies, belonged to the executor or administrator, and was looked upon as payment for his services. Later the rights of the heirs of the deceased came to be recognized and the executor or administrator was required to account to them for that portion of the personal estate which remained in his hands after all the charges and debts against the estate were paid. The rule seems to be now well established (except where changed by statute) that'upon the death of a person his personal property vests in his executor or adminstrator, who, for the time being, succeeds to all rights and responsibilities of the decedent in reference thereto. He.takes such personal property, however, in trust for the payment of the debts of the deceased, and the distribution of the remainder to his heirs. *Gray v. Hawkins*, 8 *Ohio St.* 449, 72 *Am. Dec.* 600; *Steel v. Steel*, 64 *Ala.* 438, 38 *Am. Rep.* 18; *Crist v. Crist*, 1 *Ind.* 570, 50 *Am. Dec.* 481; *Campbell v. Faxton*, 73 *Kan.* 675, 85 *Pac.* 760, 5 *L. R. A.* (*N. S.*) 1002; *McBride v. Vance*, 73 *Ohio St.* 938, 76 *N. E.* 938, 112 *Am. St. Rep.* 723, 4 *Ann. Cas.* 191; *Woods' Appeal*, 92 *Pa.* 379, 37 *Am. Rep.* 694; 11 *Ruling Case Law*, 161.

*Section* 3348 of the *Revised Code of* 1915 of this State, provides, that upon the granting of letters the executor or administrator shall become bound to the state in a bond with surety to be approved by the Register of Wills, one of the conditions of said bond being to cause a true and perfect inventory and appraisement of the goods and chattels of the deceased to be made and

filed in the office of the Register. *Section* 3365 provides that the goods and chattels of the deceased shall be distinctly entered in an inventory, and each article or set, appraised, and its value stated. *Section* 3366 provides, that the inventory of the goods and chattels shall be delivered into the Register's office by the executor or administrator within six months from the granting of the letters.

In the case before us the letters were granted on January 18, 1921, but the inventory and appraisement was not delivered into the Register's office until January 13, 1922. The court is aware of the fact that it is not unusual in this county for executors or administrators to fail to deliver the inventory and appraisement into the Register's office within the required time, which must, at times, amount to a hardship upon creditors and other persons interested in the estate; and we cannot sanction such a practice, which is clearly in violation of the plain mandate of the statute.

The highest duty that the law imposes upon an executor or administrator is that he must act in good faith; but that is not all that is required, of him, for many cases might arise where his intentions were the very best, yet, through a mistake in judgment, he failed to exercise ordinary prudence and diligence in the care and management of decedent's estate, resulting in serious loss thereto.

He is not held responsible as an insurer of goods and chattels which come into his possession in his fiduciary capacity, nor should he be held accountable for the loss or depreciation of the assets of the estate provided bad faith cannot be imputed to his acts and he uses ordinary care and diligence; but he must at all times use ordinary care, prudence, skill and diligence; which is now generally held to mean that which would be exercised by an ordinarily prudent and careful man in the management of his own affairs under similar circumstances. *Clough v. Bond*, 3 *Myl. & Cr.* 496, 40 *Eng. Reprint* 1016; *Brazier v. Clark*, 5 *Pick.* (*Mass.*) 96; *Appeal of Stewart*, 110 *Pa.* 410, 6 *Atl.* 321; *Calhoun's Estate*, 6 *Watts* (*Pa.*) 185; *Murnaghan's Estate*, 264 *Pa.* 520, 107 *Atl.* 886; *Hoffman v. Armstrong*, 90 *Md.* 123, 44 *Atl.* 1012; *Christy v. Christy*, 225 *Ill.* 547, 80 *N. E.* 242; *Foster v. Thomas*, 21 *Conn.* 285.

In the case before us the letters testamentary were granted on January 18, 1921, and the goods and chattels of the deceased

were sold on November 13, 1921. The reason given by the executor for not having sold the property sooner was, that the widow of the deceased desired to purchase it at the appraisement, stating to the executor that she would sell her farm and after paying the liens against it apply the balance in part payment of the property, and that she hoped to be able to pay the remainder from the amount realized from the crops raised on the farm during the following summer. Upon the strength of this statement the executor allowed her to retain possession of all of the personal property of the decedent and assume full charge and control of it. When it became apparent that the widow was not going to be able to carry out her intention, the property was sold by the executor at public auction.

Assuming that the executor was acting in good faith, and we feel that we would not be justified in holding otherwise on the strength of the facts before us, was it exercising the care, prudence and diligence which an ordinarily prudent and careful man would use in the management of his own affairs, when it allowed the widow to assume full charge and control of farm produce which she would necessarily be required to use, an automobile, farm utensils and machinery and household goods, all of which were subject to ordinary wear and tear, and livestock which she would likewise be required to use, upon the strength of her promise to pay for them at the appraised value, with the knowledge that her ability to pay was based upon two contigencies, first, the sale of her farm for more than enough to pay the liens against it, and, second, a successful year on the farm? We can understand the desire of the executor to assist the widow in every way that it could in what was, perhaps, the most trying experience of her life, and we admire the spirit exhibited; but we cannot overlook the fact that it was bound to administer the estate for the interest of all concerned, and that the creditors of the decedent had certain rights which it was the executor's duty to protect. No one can say what would have been realized for this property if it had been sold shortly after the letters were granted (say sometime in the spring of 1921) but it is reasonable to assume that the bulk of it was in better condition then than it was after eight months use, and it is

generally thought that property of that character sells better in the spring than in the fall.

In the case of *Clough v. Bond*, 3 *Myl. & Cr.* 496, 40 *Eng. Reprint* 1016, Lord Chancellor Cottenham had this to say:

"It will be found to be the result of all the best authorities upon the subject, that, although a personal respresentative, acting strictly within the line of his duty, and exercising reasonable care and diligence, will not be responsible for the failure or depreciation of the funds in which any part of the estate may be invested, or for the insolvency or misconduct of any person who may have possessed it, yet, if that line of duty be not strictly pursued, and any part of the property be invested by such personal representative in funds or upon securities not authorized, or be put within the control of persons who ought not to be intrusted with it, and a loss be thereby eventually sustained, such personal representative will be liable to make it good, however unexpected the result, however little likely to arise from the course adopted, and however free such conduct may have been from any improper motive. Thus, if he omit to sell property when it ought to be sold, and it be afterwards lost without any fault of his, he is liable."

Williams, in his work on *Executors, Sixth American Edition, vol.* 2, *p.* 1908, uses the following language:

"Such acts of negligence, or careless administration, as defeat the rights of creditors, or legatees, or parties entitled in distribution, amount to a devastavit. For if persons accept the trust of executors, they must perform it; they must use due diligence, and not suffer the estate to be injured by their neglect."

We feel that the judgment exercised by the executor in this case was not sound, that its acts were not those of an ordinarily prudent and careful man, and consequently the first, second, third, fourth and fifth exceptions are allowed.

The eight exception is, that an open account of $17.07 was paid to E. E. Wooten and Son in preference to demands of a higher grade. *Section* 3372 of the *Revised Code of* 1915 provides the order of payment of the debts of a deceased person by the executor or administrator out of the personal estate. It sets forth nine different classes, or grades, of debts payable in the order set forth. The ninth grade, which is the lowest grade, is, "other demands," and includes open accounts, which, we understand, was the nature of the claim of E. E. Wootten and Son for $17.07. Charles W. Spicer and Thomas C. James, two of the exceptants,

are indorsers on a certain promissory note for the sum of $580.00, held by the People's National Bank of Laurel against John W. Spicer, the deceased, which is a contract under hand for the payment of money, and is included under the eighth class, or grade, of debts as set forth in the statute. This note remains unpaid, and, the decedent's estate being insolvent, said exceptants are liable thereon as indorsers. We are, therefore, of the opinion that the payment of the open account of E. E. Wootten and Son in preference to the note held by The People's National Bank of Laurel, was the payment of a debt in preference to a debt of a higher grade, and hold that this exception should also be allowed.

The sixth exception is, that the widow was allowed to buy in all the household goods offered in mass at the sum of $27.00. This, we understand, to mean that each article of household goods was not offered for sale separately as they had been inventoried, but the entire lot was offered at one time and struck off to the widow. Would an ordinarily prudent man have taken this course in conducting a sale of his own property of a like character?

There were probably many persons present who would have bid on different articles of this property if they had been sold separately, and bid a reasonable price for them, but no one could reasonably be expected to want it all except the widow whose associations made her interest greater than that of any one else. There is no doubt that this practice has grown up in this county to some extent, but we do not know of any statute justifying it, or any reason why it should be done, except, as stated above, to aid the widow at a time when she most needs aid. As previously stated, we can understand why the executor should desire to do this, but fail to see how it can be justified where the rights of creditors intervene and the estate is not sufficient to pay the debts.

In *Freeman on Executions*, (*3d Ed.*) § 296, we find the following comment:

"Where several distinct parcels of real estate, or several articles of personal property, are to be sold, what is called a 'lumping sale' can rarely be justified. Such a sale, when objected to in due time, will not be upheld, unless special circumstances can be shown, from which it must be inferred that such a sale was either necessary or advantageous."

The following cases hold that where a sheriff has several dis-

tinct tracts of real estate belonging to the same debtor advertised for sale, each tract should be sold separately: *Tiernan v. Wilson,* 6 *Johns. Ch.* (*N. Y.*) 411; *Woods v. Monell,* 1 *John. Ch.* (*N. Y.*) 502; *Jackson, et al., v. Newton,* 18 *Johns.* (*N. Y.*) 355; *Rowley v. Brown,* 1 *Bin.* (*Pa.*) 61. While it is true the case before us involved the sale of personal property by an executor, yet we think the principle is the same.

In the case of *Woods v. Monell,* above cited, Chancellor Kent said:

"I have no doubt of the value and solidity of the rule, that where a tract of land is in parcels, distinctly marked for separate and distinct enjoyment, it is, in general, the duty of the officer to sell by parcels, and not the whole tract, in one entire sale. To sell the parcels separately is best for the interest of all the parties concerned. The property will produce more in that way, because it will accommodate a greater number of bidders."

We are of the opinion that as to this exception, also, the executor has failed to act as an ordinarily prudent and careful person would have acted in conducting his own affairs, and this exception is also allowed.

This brings us to the question of what value is to be placed upon the property mentioned in the exceptions, which have been allowed.

The law seems to be well settled that the inventory and appraisement of a decedent's personal estate is generally treated as *prima facie* evidence of the value of said personal estate, but it is not conclusive. *Willoughby v. McCluer,* 2 *Wend.* (*N. Y.*) 608; *In re Mullon's Est.* 145 *N. Y.* 98, 39 *N. E.* 821; *Cameron v. Cameron,* 15 *Wis.* 1, 82 *Am. Dec.* 652; *Steele v. Knox,* 10 *Ala.* 608; *Craig v. McGehee,* 16 *Ala.* 41; *Carrol v. Connet,* 2 *J. J. Marsh.* (25 *Ky.*) 195.

In the absence of proof to the contrary, what better method have we of ascertaining the true value of the personal estate of a deceased person, than by the inventory and appraisement? In the present case it was made by two disinterested persons appointed by the Register of Wills.

It is argued by the attorney for the executor that it was shown by the evidence that the appraisement was too high and that the household goods belonged to the widow, Mrs. Spicer. If this is

true, the executor had its remedy under *Section* 3370 of the *Revised Code of* 1915, which provides, as follows:

"The Register shall have power to order an inventory, or list of debts, to be suppressed, or to adjudge the same imperfect, and to order another to be made and delivered into his office."

This course was not taken. We understand the widow did claim a cow, which was allowed her, but having made no claim to any other property, we do not think she should be allowed to claim the household goods after the expiration of more than a year from the time when they were included in the inventory and appraisement of the personal effects of the deceased, and when exceptions have been filed to the account. Mr. Wootten, the agent of the executor, did make the bare statement when he testified at the hearing, that the property was appraised too high. There were no specific statements as to the manner in which it was too high, nor was there any testimony as to any specific articles which were overappraised. In contradiction of the testimony of Mr. Wootten, both appraisers testified that the property was appraised at its fair value. There was also testimony that specific articles were worth the amount for which they were appraised. Upon this state of facts we hold that the inventory and appraisement is the best evidence of the property of the decedent in this case and the value thereof, and should stand as such.

We hold that the account should be surcharged by the difference between the appraised value and the amount realized at the sale for the items mentioned in the first, second and fourth exceptions; by the appraised value of the items mentioned in the third and fifth exceptions; and by the amount paid to E. E. Wootten and Son, which is the basis of the eighth exception, the total of which we estimate to be the sum of $875.02.

Let an order be entered accordingly.