IN THE MATTER OF THE ESTATE OF ETHEL COLLINS WHEATLEY, DECEASED.

*Orphans' Court, Sussex, May 11, 1948.*

CAREY, J., sitting.

*Daniel J. Layton, Sr.,* for exceptants.

*James M. Tunnell, Sr.,* of the firm of Tunnell of Tunnell and Tunnell for administrator.

CAREY, Judge:

The sole argument for the administrator is based upon

the fact that there was a public sale of the stock in question. He contends that former rulings of this court have established the principle that a public auction is the prudent way for an administrator to dispose of personal property and that an administrator who follows that procedure in a proper manner, fairly and without fraud, cannot be held liable for a deficiency in price as contrasted with what might have been obtained in some other way. He suggests that this procedure, as respects personalty, has become so customary in this State that this administrator had a right to believe that by following it he could not thereby run the risk of personal liability. For these views, he relies chiefly upon Judge (now Chancellor) Harrington's opinion in *Boyer v. Cole*, 16 *Del. Ch.* 445, 143 *A.* 489.

In the *Boyer* case, the furniture and household goods of the estate were sold at private sale to a daughter of the deceased at the appraised value. The court held: (1) the appraisement is *prima facie* evidence of the true value; (2) the administrator had legal title to the personalty and could pass title to a purchaser at private sale; (3) the administrator was bound to use reasonable care and diligence to obtain the best possible price and would be liable for any loss to the estate occurring by reason of a private sale for less than its fair value, even though it was so appraised; (4) prudence dictates that such property be sold at public sale after due notice. The exception was denied, however, because the court was not satisfied that the goods were actually worth more than the appraisal and sale price.

It will be noticed that the court was there speaking of furniture and household goods and indicated that the prudent way to sell such property was by public auction. Its words should not be construed to mean that this method is prudent under all conditions and as to all kinds of personalty. There is no case in this State wherein a court has laid down any hard and fast rule to govern the method of sale of all kinds of personal property nor does any case go so far as to say that an administrator will be absolutely

protected by a public sale regardless of the nature of the property. In fact, for obvious reasons it would be extremely unwise to lay down any such rule. The true test and the only test, in the absence of fraud or bad faith, is the standard of the reasonable prudent man. Each case must be judged on its own merits by that standard. This point is clearly brought out in the case of *In re Spicer's Estate, 13 Del. Ch.* 430, 120 *A.* 90. A person who qualifies as an administrator of an estate undertakes the responsibility of handling its affairs as a reasonable prudent man would handle his own under similar conditions. The matter of disposing of personalty is a part of his job and his method of doing so will not subject him to liability if it meets the above test. He has, and needs, a certain latitude; the exercise of discretion is required; it would be just as improper to say that he is absolutely protected by public auction as to say that he is never protected by a private sale.

There is a suggestion in the brief of the exceptants that a sale of stock through a recognized broker on the market may in effect be a public sale. Present needs require no examination of that point. Certainly a stock listed on a recognized exchange and traded almost daily (as appears to be the case with this particular stock) has a ready market, and even though its price fluctuates to some extent, it is usually possible to learn how much it can be sold for on any given day, at least within the limited range of a dollar or two. The expense of selling it in that manner is negligible. An administrator who disposes of stock in that manner within a reasonable time after his appointment would hardly be subject to criticism; that is the customary way by which prudent persons sell listed stocks.

In the present petition, there is no specific charge of fraud or bad faith and the facts alleged do not necessarily present such a case. The real question here is whether the administrator's course was that of a prudent man. In my opinion, it was not. The appraisement made and filed before the sale was obviously based upon market quotations.

He must have known the amount of that appraisement because, under our practice, he had to sign it before it was filed. He must have realized the great improbability of securing at public auction a figure greater than the market quotations. Indeed, the probability was to the contrary. There was nothing to be gained by selling at auction, but there was a good chance of loss. Furthermore, even if there had been some reason to anticipate bidding of an adequate price, prudence would have dictated the taking of some steps to protect the estate against loss. Several ways of doing so are suggested with approval in *Bradley's Executor v. Baynard*, 2 *Houst.* 559, 568. Under that authority, there would have been no legal obstacle to his fixing a minimum price in advance, reserving to himself the right to bid, or withdrawing the property before the high bid was accepted by the auctioneer. In view of the nature of the property and its ready saleability at a known approximate price, the failure to obtain its true value constitutes want of ordinary prudence and requires a surcharge. The exceptions will be allowed.

There was no undue delay in making this sale, and if it had been made properly, a price of $4624.25 or more would have been obtained, depending upon the date of sale. It happens that the lowest market price of the stock during the period in question existed on the very day the actual sale took place. The appraised value was only $.25 per share more than that lowest market quotation. I can conceive of no theory by which the administrator could be justly criticized if he had sold on the market that same day at the price of $87.25. Our courts have often relied upon appraised value in cases of surcharge, but here we have a better yardstick than the appraisement. It seems equitable in this instance that the amount of the surcharge should be the difference between the figure actually received and the aforesaid sum of $4624.25, that difference being the amount of $4044.25.

An order should be submitted requiring the administrator to include this sum in his next account and requiring him personally to pay the costs of these exceptions.