COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report:  June 12, 2020
Draft Report:  May 29, 2020
Date Submitted:  February 12, 2020

Victoria D. Chambers, pro se
3 Paxton Lane
Bear, DE 19701

James D. Chambers, pro se
511 North Union Street, Apt. 3I
Wilmington, DE 19805

Sheldon S. Chambers, pro se
1332 Goldeneye Drive
New Castle, DE 19720

Re:   *IMO the Estate of Evelynn Chambers*
Register of Wills Folio No. 168119

Dear Parties:

Pending before me are exceptions to an estate accounting.  The exceptants contend that the personal representative, their brother, failed to provide sufficient information in the first accounting, misstated the nature and value of the estate as well as the debts of the estate, and misused estate assets in his administration.  The personal representative denies any deficiencies or improprieties and seeks approval of the final accounting, as is.

In this post-trial final report, I find no overarching mismanagement of the estate, nor impermissible use of estate property by the personal representative. But I do find that the personal representative erred in failing to properly utilize a pension designated for funeral expenses and the estate suffered as a result. Thus, I recommend that the personal representative be surcharged for the misapplied pension but that the remaining exceptions be overruled. This is my final report[1]

## I.    BACKGROUND[2]

Evelyn Chambers ("Decedent") died on November 13, 2017.[3] She is survived by three children, Sheldon Scott Chambers, Victoria D. Chambers, and James D. Chambers, Jr.[4] Following Decedent's death, Sheldon Scott Chambers (the "Personal Representative"), initiated probate proceedings in the New Castle County Register of Wills under a will dated August 30, 2000.[5]

---

[1] This report makes the same sustantive findings and recommendations as my May 29, 2020 draft report to which no exceptions were filed.

[2] The facts in this report reflect my findings based on the record developed at trial held on February 12, 2020. I grant the evidence the weight and credibility I find it deserves. Citations to the trial transcript are in the form "Tr. #." Trial exhibits are cited as "PR Ex. #."

[3] Docket Item ("D.I.") 1.

[4] *Id.*

[5] D.I. 2.

Letters were issued to the Personal Representative on December 8, 2017,[6] and he filed an inventory of the estate on December 26, 2017 and a first accounting on March 29, 2019 (the "First Accounting").[7] A proposed final accounting was filed on May 9, 2019 (the "Final Accounting").[8]

On or about May 7, 2019, Victoria D. Chambers and James D. Chambers, Jr. (the "Exceptants"), filed exceptions to the First Accounting *pro se*.[9] The Exceptants took issue with (1) the format the Personal Representative used to list expenditures and the representative receipts provided; (2) failure to include information related to Decedent's home in the accounting; (3) failure to use the State Employee Pension Plan benefit toward Decedent's funeral expenses; and (4) the attorneys' fees and expenses incurred by the Personal Representative and charged to the estate.[10] The exceptions apply

---

[6] D.I. 1. I presided over a related civil action challenging the validity of the will admitted to probate, among other things. *See In Re Evelyn Chambers*, C.A. No. 2018-0630-SEM (Del. Ch.). The claims were dismissed as time-barred and for failure to state claim on April 11, 2019 and September 12, 2019, respectively. *See id.* at D.I. 25, 45.

[7] D.I. 6, 19-28.

[8] *See* D.I. 34.

[9] *See* D.I. 35.

[10] *Id.* The Exceptants raised a number of additional concerns at trial including (1) alleged entitlement to payment from the estate for caregiving services provided to Decedent and (2) general allegations of improper motivations behind the Personal Representative's actions and his failure to consult with the Exceptants during his administration. *See, e.g.*, Tr. 20:5-20, 24:7-12. This decision, however, focuses on the exceptions that were timely identified; those raised for the first time at trial should be overruled as untimely. *See* 12 *Del. C.* § 2302(d) (setting forth a three (3) month deadline for exceptions).

equally to the Final Accounting, which is substantially similar to the First Accounting. The Personal Representative responded to the exceptions on June 24, 2019, denying any wrongdoing and attesting that the First Accounting was accurate, the Personal Representative performed his duties appropriately, and the Final Accounting should be approved.[11] Trial on the exceptions was held on February 12, 2020.[12]

## II. ANALYSIS

The Personal Representative serves in a fiduciary capacity and is "responsible for compiling the inventory of Decedent's estate, managing the Decedent's assets, and paying Decedent's debts."[13] The Personal Representative "has a duty of loyalty requiring [him] to act, at all times, in the best interests of the estate"[14] and is required to file accountings with the Court with copies provided to all estate beneficiaries.

With any estate accounting filed, heirs and beneficiaries are provided an opportunity to object to all or part of the accounting through exceptions. "[T]he Delaware Constitution provides that when exceptions are heard by the

---

[11] D.I. 36.
[12] *See* D.I. 39.
[13] *Dixon v. Joyner*, 2014 WL 3495904, at *3 (Del. Ch. July 14, 2014).
[14] *In re Estate of Rose*, 2019 WL 2996887, at *3 (Del. Ch. July 9, 2019).

Court, 'the account shall be adjusted and settled according to the right of the matter and the law of the land.'"[15] Under Court of Chancery Rule 198, "the personal representative bears the initial burden of demonstrating that the account was properly prepared."[16] "That burden shifts, however, where the exceptant seeks a surcharge. In those instances, the exceptant 'must demonstrate affirmatively that a surcharge is warranted.'"[17]

### A. The First Accounting and Final Accounting Are Sufficiently Itemized.

The Exceptants contend that the Personal Representative failed to properly itemize the estate expenses in, and did not attach sufficient receipts to, the First Accounting. I disagree. The First Accounting and Final Accounting both list the expenses by category (e.g., administrative expenses) and then break down, within each category, the expenses by payee and total amount. Although the Personal Representative could have been more detailed by listing expenses bill-by-bill, there is no requirement that he do so, insofar

---

[15] *In re Estate of Rich*, 2013 WL 5966273, at *1 (Del. Ch. Oct. 29, 2013) (quoting Del. Const., Art. IV, § 32, ¶ 2, cls. 3 & 4).

[16] *Id.*

[17] *In re Estate of Marvel*, 2018 WL 4762379, at *2 (Del. Ch. Oct. 1, 2018) (quoting *In re Estate of Stepnowski*, 2000 WL 713769, at *1 n.1 (Del. Ch. May 2, 2000)).

as the format he chose accurately and fully represented the expenses of the estate. It did.

Sufficient supporting documentation was also attached to the First Accounting and incorporated into the Final Accounting. Again, although attaching each and every invoice or bill may have been wiser, the Personal Representative provided sufficient support for the expenses with his representative samples; particularly for the recurring, non-fluctuating charges. The Personal Representative is held only to a standard of "ordinary care, prudence, skill and diligence" is his duties and he has met that standard in the First Accounting and Final Accounting.[18] Thus, the itemization exceptions should be overruled.

## B. Decedent's Home Passed Outside the Estate.

The Exceptants contend that the Personal Representative erred or acted improperly by failing to list Decedent's home as an asset of the estate and account for its sale and related mortgage pay off. The Exceptants' concerns, however, rest on a fundamental misunderstanding: Decedent's home was not part of the estate. The home passed, under Decedent's will, to the Personal

---

[18] *See Del. Trust Co. v. McCune*, 80 A.2d 507, 511 (Del. Ch. May 3, 1951) (citing *In re Estate of Spicer*, 120 A. 90, 92 (Del. Orph. 1923)).

Representative.[19]  It passed outside of the estate and, as such, the Personal

Representative did not need to account for it.  Nor did the Personal

Representative need to account for the mortgage, which he presumably

assumed, because it is no longer listed as a debt of the estate.[20]

### C. The State Employee Pension Plan Should Have Been Used To Pay The Funeral Expenses.

The Exceptants contend that the Personal Representative improperly

charged funeral expenses to the estate while at the same time retaining a burial

benefit from the State of Delaware meant to cover such expenses.  Decedent

had a State Employee Pension Plan that designed $7,000.00 to be used for

funeral expenses.[21]  Rather than apply the benefits as they were designated,

the Personal Representative accepted the benefit as if he were the personal

---

[19] *See* D.I. 2 ¶ III.  At trial, the Exceptants raised concerns about how Decedent came to acquire the home and they lobbed allegations of impropriety at the Personal Representative. *See, e.g.*, Tr. 18:11-19; 29:19-23.  Even if true, however, the Decedent's will unequivocally bequeaths the home to the Personal Representative and this Court will not rewrite that even if, in historical context, it seems unwise, inequitable, or mistaken.  *See Miller v. Equitable Tr. Co.*, 32 A.2d 431, 434 (Del. 1943) (addressing the rules of interpreting a will and explaining this Court is "bound thereby and the power is lacking for us to make a new will for the testator, or by some semblance disguised under the theory of construction invoke an idea that might to our minds be a more equitable scheme of disposition").

[20] The exceptions also contained concerns about mortgage payments but it is unclear what, exactly, the Exceptants contested and they did not press this issue at trial.  As such, any concerns were either waived or should fail in light of the proof submitted by the Personal Representative that he properly administered the estate.

[21] *See* PR Ex. 1.

beneficiary and charged the funeral expenses, in full, to the estate.[22]  He should

not have done so.  The Personal Representative owed a duty to respect and

execute Decedent's wishes, including her plan for the State Employee Pension

benefit.  The Personal Representative failed to do so in accepting the benefit

personally, rather than using it for its intended purpose.  A surcharge is the

appropriate remedy.

"A surcharge is, essentially, a sanction against a personal representative

requiring the personal representative to fund (or refund) the estate because the

personal representative improperly or poorly handled the estate, engaged in

selfdealing, or improperly depleted estate assets."[23]  Here, because the

Personal Representative retained the benefit, harming the estate, which in turn

incurred greater funeral expenses, he should be surcharged for the full amount

improperly retained: $7,000.00.  The Personal Representative should repay the

---

[22] Technically, the Personal Representative arranged for payment of the funeral expenses from a separate insurance policy and then sought reimbursement, in full, from the estate. *See* Tr. 56-65.  Either way, the result is the same: the estate's coffers will pay for the funeral expenses in full.  *See infra* n.23.

[23] *In re Estate of Clark*, 2019 WL 3022904, at *7 (Del. Ch. July 9, 2019).  "[S]urcharges are normally tailored to remedy the specific harm caused, rather than to punish the personal representative." *Id.*

estate $7,000.00 and prepare and file an amended accounting to reflect the repayment and its effect on the estate.[24]

### D. The Attorneys' Fees Should Be Approved.

The Exceptants contend that the Personal Representative improperly charged the estate for his personal attorneys' fees and expenses. "[F]ees paid to the attorney for the personal representative are considered an expense of the estate."[25] "The rational[e] behind this rule is that the personal representative and his or her attorney is providing a service to the estate and its beneficiaries by properly and efficiently administering the estate."[26] But, the Personal Representative still bears the burden of proving the attorneys' fees and expenses were relevant, reasonable, and timely.[27] I find the Personal Representative has met his burden.

---

[24] The Personal Representative explained at trial that the funeral expenses listed on the Final Accounting represent a future reimbursement to the Personal Representative and his brother (the two beneficiaries of the insurance policy used to pay the expenses upfront) in equal shares. Tr. 6-13. Thus, the only appropriate recipient of the surcharge ordered herein is the estate.

[25] *In re Pusey*, 1997 WL 311503, at *3 (Del. Ch. May 23, 1997).

[26] *Id.*; *see also Davis v. Rawlins*, 2 Harr. 125, 125-126 (Del. 1836).

[27] *See In re Rich*, 2013 WL 5966273, at *4 (Del. Ch. Oct. 29, 2013) (explaining this Court utilizes a three-factor test to analyze "the appropriateness of [accounting] deductions: relevance, reasonableness, and timeliness").

The Personal Representative has presented sufficient documentation of the attorneys' fees and expenses incurred, which included estate administration fees and fees incurred in defending a civil action filed by the Exceptants.[28]  All of these fees were properly charged to the estate; they were incurred by the Personal Representative in his fiduciary capacity and provided a service to the estate.  Regarding the civil action, the Personal Representative was named in that action in his capacity as the personal representative of the estate and the attorneys' fees incurred worked a benefit to the estate in defending against the untimely will contest and permitting administration to proceed.  Further, the Personal Representative arguably "saved" the estate additional attorneys' fees and expenses by requesting that his attorney withdraw before trial in this action; absent withdrawal, the attorneys' fees and expenses would have increased.  I find that the attorneys' fees and expenses incurred by counsel to the Personal Representative were relevant, reasonable, and timely.[29]

---

[28] PR Ex. 2.

[29] *See In re Rich*, 2013 WL 5966273, at *4.

## III.    CONCLUSION

For the foregoing reasons, I recommend that the exceptions be overruled in part and sustained in part.    Regarding the former, I find the Personal Representative has met his burden of proving the estate was, generally speaking, properly administered.    On the latter, I find that the Personal Representative improperly retained a pension benefit that should have flowed through the estate to defray the cost of funeral expenses.    I recommend that the Personal Representative be surcharged for his retention of that benefit in the amount of $7,000.00.    The surcharge should be paid within sixty (60) days of this report becoming final.

Once the surcharge is paid, I recommend that the Personal Representative file a revised accounting reflecting his payment and its effect on the estate.    The amended accounting will be subject to the standard notice and exception process, although any exceptions that were, or could have been, raised in response to the First Accounting or Final Accounting may not be raised in response to the amended accounting.

This is a final report and exceptions may be taken in accordance with Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery