IN THE MATTER OF THE ESTATE OF DANIEL P. HARRIS, DECEASED.

*Sussex, September 11, 1945.*

CAREY, J., sitting.

*Tunnell & Tunnell,* for Sussex Trust Co., executor.

*Howard W. Bramhall,* for Daniel J. Harris, one of the devisees.

*Caleb M. Wright,* (Everett F. Warrington, of New York City, of counsel), for John M. Wolfe, judgment creditor of Daniel J. Harris.

*Isaac D. Short, 2d.* for William C. Harris, devisee.

CAREY, Judge:

The only question to be determined is whether or not this court should direct the payment of Wolfe's judgment

out of the moneys belonging to Harris. The validity of that judgment has not been questioned. The present discussion might therefore possibly be resolved in a rather summary manner. If Harris wants to pay the debt, he should have no objection to its payment by the executor; if he does not want to pay the debt, he is then in the position of asking this court—a court which acts according to equitable principles—to assist him in avoiding a lawful obligation. However, as that line of reasoning may be considered unconvincing, further analysis of the problem seems desirable.

It is well settled in Delaware that the title to real estate descends to the heirs or vests in the devisees immediately upon the death of the testator subject to be divested if it be necessary to sell it for the payment of debts of the deceased. *Brennan, et al., v. Wilmington Trust Co.,* 2 *W.W. Harr.* 482, 126 *A.* 42; *Spruance v. Darlington,* 7 *Del.Ch.* 111, 30 *A.* 663. The devisees in this case could have been deprived not only of the land itself but also the entire proceeds therefrom if the debts of the testator had required the use of the entire fund. However, during the interval between the testator's death and the sale by the executor, the devisees had title and Wolf'e judgment was therefore a lien upon the one-half interest of Daniel J. Harris in that property. The sale by the executor not only deprived Harris of his title in the land but also deprived Wolfe of any right to proceed against the land itself. *Brennan, et al., v. Wilmington Trust Company, supra.*

In 4 *Pomeroy's Equity Jurisprudence,* (*5th Ed.*) 496, the following statement appears:

"Where land is sold by order of the court for any purpose, it is a fixed principle, upon which the court always proceeds, that the character of the property should be changed only so far as may be necessary to accomplish the particular purpose."

This same principle was approved in *Cornog v. Cornog,* 3 *Del.Ch.* 407. No case has been called to my attention which indicates a contrary rule. *Kolars v. Brown,* 108

*Minn.* 60, 121 *N.W.* 229, 133 *Am.St.Rep.* 410, is very definitely in point. There the court treated the surplus after the payment of the decedent's debts as real estate and ordered a judgment against an heir paid. A similar principle was followed by the Superior Court of Delaware in the case of *Carlisle v. Parker,* 8 *W.W.Harr.* 83, 188 *A.* 67, in which that court held that surplus money arising from a sale of land upon the foreclosure of a mortgage stands in the place of the land itself and is regarded as realty as to those who either hold the title or had liens upon the land. The Superior Court, on appeal from this court, *In re Andrews' Estate,* 34 A.2d 700, considered a somewhat analogous situation. The contending parties were a judgment creditor and the widow of the deceased. She elected to take the appraised value of her dower. Although she was a defendant in the judgment, the court ordered the money paid to her because the judgment was not a lien upon her interest, dower never having been assigned by metes and bounds. This holding would indicate, by implication, that the judgment creditor would have been paid if its judgment had been a lien upon her interest.

Any possible doubt on this point is set at rest by 3888, *Sec.* 12, *Chapter* 99, *Revised Code* 1935, which, in effect, provides that the surplus over and above the debts of the deceased shall belong to the person to whom the premises belonged at the time of the sale, who shall have the same proportion, quantity, and manner of interest in the surplus as he had in the premises sold. The obvious meaning of this statute is that the surplus is to be treated as real estate. It necessarily follows that the judgment continues to be a lien upon the surplus.

The matter might be clarified somewhat by a very slight alteration of the facts. Let us suppose that the deceased had left two separate tracts of land instead of one tract. Let us further suppose that one of these tracts had brought a sum sufficient to pay all debts of the deceased. The execu-

tor could not then have sold the second tract. The result would have been that Harris would still have owned a one-half interest in this second tract subject to the lien of Wolfe's judgment. In view of the fact that this court must consider the actual surplus now in hand as real estate, the situation is exactly the same as the supposititious case set forth.

Prior to this sale, Daniel J. Harris owned a one-half interest subject to Wolfe's judgment; after the sale, Harris became entitled to one-half of the surplus which was held in exactly the same manner as the land had previously been held, that is to say, subject to the lien of Wolfe's judgment. The lien was transferred to his share of the surplus. This court cannot ignore that lien by ordering the entire fund paid to Harris. To do so would clearly deprive the judgment creditor of a vested right.

Certain authorities have been cited by the attorney for Daniel J. Harris in support of the contention that this court has no jurisdiction to order the money paid to the judgment creditor. No Delaware case is cited and I consider the citations irrelevant.

The statute under which this action was instituted, being *Chapter* 143, *Volume* 42, *Laws of Delaware, page* 295, reads in part as follows:

"The jurisdiction of the Orphans Court shall extend to and embrace the distribution of the assets and surplusage of the estates of decedents among the persons entitled thereto in all cases where such jurisdiction is invoked as hereinafter provided."

In view of the express authority given to this court by that statute, there seems to be no point in discussing this question further. See *First National Bank of Frankford v. Andrews*, 26 *Del. Ch.* 344, 28 *A.* 2d 676. Indeed, it would be impossible for this court to give the executor any instructions unless it also had the right to hear and determine the interests of all persons in the fund.

I have no hesitancy in holding that this court has ample power to hear and determine these claims and to instruct the executor as to the proper application of the fund. The balance of Thirteen Hundred Sixty One Dollars and Forty One Cents ($1361.41) should therefore be first applied to the payment of the debt, interest and costs of the judgment in favor of John M. Wolfe against Daniel J. Harris, and the excess, after the payment of the costs of this proceeding, should be paid to Daniel J. Harris.

An order should be prepared accordingly.