In The Matter of the ESTATE OF Barry BERNSTEIN.

Ocie Bernstein, Petitioner,

v.

Carol B. Lovett, Respondent.

Civil Action No. 3728–MA.

Court of Chancery of Delaware.

Submitted: Jan. 26, 2011.
Decided: March 11, 2011.

David J. Ferry, Jr., Esquire, Kristopher T. Starr, Esquire, Ferry, Joseph & Pearce, P.A., Wilmington, Delaware, Attorneys for Petitioner, Ocie Bernstein.

Francis J. Trzuskowski, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware, Attorney for Respondent Carol B. Lovett.

## OPINION

STRINE, Vice Chancellor.

### I. *Introduction*

This case comes to me by way of two exceptions lodged by the parties to a Master's Report issued on September 1, 2010 regarding the administration of the estate of the decedent, Barry Bernstein.[1]

Mr. Bernstein's daughter and his estate's executrix, respondent Carol B. Lovett, takes exception to the Master's calculation of the elective share to which Mr. Bernstein's surviving spouse and the petitioner, Mrs. Ocie Bernstein, is entitled under Delaware's elective share statute, 12 *Del. C.* §§ 901–908. Under that statute, a surviving spouse may elect to receive, in lieu of what, if anything, is devised to her under the decedent spouse's will, a statutorily calculated amount known as the elective share. Central to that calculation, and to Lovett's exception, is that if the surviving spouse receives, by virtue of her spouse's death, value equal to or in excess of the elective share amount, the surviving

---

1. *In the matter of: Estate of Barry Bernstein And Bernstein v. Lovett,* C.A. No. 3728–MA (Sept. 1, 2010) ("Master's Report").

spouse's elective share is deemed to have been satisfied and the surviving spouse is entitled to nothing further. In support of her exception, Lovett contends that the value of a real estate interest, devised to Mrs. Bernstein under Mr. Bernstein's will, must equal the full unencumbered appraisal value of that interest despite the fact that the real estate interest was at all times subject to a mortgage and subject to sale, and in fact was sold in order to satisfy the debts of Mr. Bernstein's estate. Mrs. Bernstein thus yielded nothing from the devise of this encumbered interest. Under Lovett's reading of our elective share statute, then, this court would pretend as if Mrs. Bernstein received value from her devised interest in real estate that exceeds the elective share amount even though after satisfying Mr. Bernstein's debts Mrs. Bernstein received nothing for that real estate interest. But the elective share statute requires the court to consider "[t]he value of the property transferred to the surviving spouse" which entails a valuation that considers what economic value the surviving spouse actually receives.[2] I therefore conclude, as did the Master, that Lovett's argument and desired result is contrary to the evident purpose of the elective share statute—to prevent spousal disinheritance—as embodied in the statute's plain and unambiguous language, and deny Lovett's exception.

For her part, Mrs. Bernstein takes exception to the Master's conclusion that Lovett is not personally liable for the entire elective share amount. According to Mrs. Bernstein, this court should require Lovett to pay the entire elective share amount because Lovett breached her fiduciary duty as executrix by virtue of her receiving, and allegedly failing to preserve, certain mutual fund accounts that under our law passed to Lovett automatically and immediately upon Mr. Bernstein's death and that can be called upon as part of Mr. Bernstein's contributing estate to pay Mrs. Bernstein her elective share. The Master rejected that argument, holding that because the mutual fund accounts which passed automatically by operation of law upon Mr. Bernstein's death were never a part of the testamentary estate, Lovett, *as executrix*, owed no fiduciary duty to Mrs. Bernstein in administering them, and as a result there was no reason to hold Lovett liable for the entire elective share. Instead, the Master ruled, in accordance with 12 *Del. C.* § 908(a), that such liability shall be apportioned pro-rata between Lovett and her late brother Hank, the only other recipient of the so-called contributing estate who can be called upon to satisfy Mrs. Bernstein's elective share. The Master's conclusion was proper both as a matter of fact and of law. I therefore also deny Mrs. Bernstein's exception.

## II. *Factual Background*

Because both parties agree that the facts in the Master's Report are accurate,[3] I draw the relevant facts from the Master's Report.

Mr. Bernstein died on October 4, 2007 after a seven year marriage to Mrs. Bernstein. Mr. Bernstein was survived by two children from a previous marriage, Lovett and her late brother, Hank. Letters testamentary were granted to Lovett as executrix of Mr. Bernstein's estate on November 8, 2007, but disputes relevant to the exceptions about how Mr. Bernstein's estate should be distributed soon erupted between Mrs. Bernstein and Lovett.

Shortly before his marriage to Mrs. Bernstein, Mr. Bernstein had purchased with Lovett a condominium in New Jersey (the "New Jersey Condominium") of which

---

**2.** 12 *Del. C.* § 903.

**3.** Resp. Op. Br. at 2; Pet. Op. Br. at 2.

Mr. Bernstein owned a one third interest as tenant in common with Lovett.[4] At the time of Mr. Bernstein's death, the New Jersey Condominium had an appraised value of $315,000, but was subject to a mortgage balance of $108,815.72. By a codicil to his will, Mr. Bernstein devised his one third interest to Mrs. Bernstein, which, under New Jersey law, passed to Mrs. Bernstein immediately upon Mr. Bernstein's death.[5] Mr. Bernstein also owned bank accounts, mutual fund accounts, bonds, and life insurance policies. The bank accounts were all jointly owned with either Mr. Bernstein's two children or with Mrs. Bernstein, which meant that they passed automatically by operation of law, and outside Mr. Bernstein's estate, at the moment of Mr. Bernstein's death.[6] The four mutual fund accounts, worth $371,796.24, were also transferrable to his two children in equal shares upon his death (the "TOD Accounts"). In addition to the one third interest in the New Jersey Condominium, Mrs. Bernstein received other assets, including interests in joint property and insurance proceeds[7] valued in the aggregate at $34,240.23.

Because all of the property interests described above passed by operation of law, and not through Mr. Bernstein's testamentary estate, Mr. Bernstein's testamentary estate contained only $2,205 worth of tangible personal property including a car, books, a few paintings, and jewelry.

As is often the case, Mr. Bernstein left behind debts that needed to be satisfied, in addition to the expenses necessary to administer his estate. Specifically, the debts included the $108,815.72 mortgage balance on the New Jersey Condominium (of which Mr. Bernstein was liable for one third, or $36,295.24), medical expenses, taxes, funeral expenses (approximately $14,000), and estate administration expenses (approximately $65,000). All in all, Mr. Bernstein's estate was saddled with $101,420.85 worth of debt. That amount clearly exceeded the $2,205 of personal property and Lovett filed a petition in this court to sell the New Jersey Condominium to pay debts on January 13, 2008.[8]

Mrs. Bernstein and Lovett failed to reach an accord and litigation ensued. At one point, the parties stipulated to the dismissal, without prejudice, of the petition to sell the New Jersey Condominium, but after an unsuccessful mediation, Lovett

---

4. Lovett's two thirds interest in the New Jersey Condominium is held jointly with her husband.

5. *Egner v. Egner*, 183 N.J.Super. 326, 443 A.2d 1104, 1105–06 (1982) ("It is settled law that title to real property vests in the heir or devisee automatically and immediately upon the death of the owner."). The parties agree that New Jersey law applies to the devise of the New Jersey Condominium, and further that Delaware law tracks *Egner*. *See In re Harris' Estate*, 44 A.2d 18, 19 (Del.Super. Ct. & Orphan's Ct.1945) ("It is well settled in Delaware that the title to real estate descends to the heir or vests in the devisees immediately upon the death of the testator....").

6. *In the Matter of the Estate of Barnes*, 1998 WL 326674, at *1 (Del.Ch. June 18, 1998) ("When a true joint tenancy exists, one of the

consequences of such an arrangement is that the ownership of the asset passes to the surviving joint tenants when one of them dies and does not pass through the estate of the one who died.").

7. Life insurance proceeds are not part of the testamentary estate, and therefore do not pass through the testamentary estate, unless made payable to the estate. *In re Estate of Sexton*, 2007 WL 2303915, at *3 (Del.Ch. Aug. 8, 2007) (citing *In re Estate of England*, 2000 WL 128854 (Del.Ch. Jan. 4, 2000)).

8. Both parties agree that the estate's debts exceed the estate's assets. Master's Report at 7.

filed an equivalent petition to sell the New Jersey Condominium in New Jersey Superior Court, which was granted on March 5, 2009. The New Jersey court's order was conditioned on placing one third of the sale proceeds in escrow pending either an agreement among the parties or an order of this court directing their disposition.

Lovett and her brother Hank, as the beneficiaries of the residuary estate, attempted several times, but were allegedly thwarted in each instance by Mrs. Bernstein, to obtain Mr. Bernstein's personal property in Mrs. Bernstein's Newport house. This led to more litigation, and Lovett sought an order from the Master to compel Mrs. Bernstein to surrender the personal property. Mrs. Bernstein, for her part, filed a petition in this court in April 2008 for an elective share.

The Master conducted a two day trial in early 2009 on the issues of Mrs. Bernstein's elective share and the motion made by Lovett to obtain personal property of Mr. Bernstein still in Mrs. Bernstein's possession. The Master issued a draft report on October 7, 2009 in which she calculated Mrs. Bernstein's elective share amount and granted Lovett's motion to obtain the property of Mr. Bernstein still held by Mrs. Bernstein. Each party took exception to portions of the draft report dealing with the calculation and satisfaction of Mrs. Bernstein's elective share under the elective share statute, 12 Del. C. §§ 901–908. Master Ayvazian then issued the final Master's Report on September 1, 2010 in which she denied both parties' exceptions.

■ The New Jersey Condominium was sold on August 1, 2010 at a price of $205,000.00.[9] After deducting expenses incurred in the sale and assessing past condominium fees and mortgage payments to Mrs. Bernstein, who had not paid anything since Mr. Bernstein's passing, $1,976.01 remained of the sale proceeds. That $1,976.01, per the New Jersey court order and applicable Delaware law,[10] is to be used to pay the remaining debts of Mr. Bernstein's estate which total $101,420.85. For non-mathematical readers, this means that Mrs. Bernstein received nothing of economic value for her one third interest in the New Jersey Condominium.

### III.  Analysis

■ I will deal with each exception in turn, beginning with Lovett's. As is the case with any review of exceptions taken to a Master's report since *DiGiacobbe v. Sestak*,[11] the standard of review applicable

9. The Master's Report does not reference the sale, presumably because the last brief on the exceptions to the Master's draft report was filed on January 22, 2010, nearly seven months before the New Jersey Condominium was sold.

10. As noted, the New Jersey Court order conditioned the grant of Lovett's petition to sell the New Jersey Condominium on one third of the net sale proceeds being placed in an interest bearing account pending either an agreement among the parties or an order by this court directing its disposition. *In the Matter of the Estate of Barry S. Bernstein*, Docket No. MON P–342–08 S# 216879 (ORDER). Under both Delaware and New Jersey law, title to real estate passes to the devisee immediately upon the testator's death but is subject to defeasance in order to pay the estate's debts. *See In re Harris' Estate*, 44 A.2d 18, 19 (Del.Super. Ct. & Orphan's Ct.1945) ("title to real estate descends to the heir or vests in the devisees immediately upon the death of the testator *subject to be divested if it be necessary to sell it for the payment of debts of the deceased.*") (emphasis added); *McTamney v. McTamney*, 138 N.J.Eq. 28, 31, 46 A.2d 444 (1946) (quoting PAGE ON WILLS) (" 'upon the death of the testator and even before the probate of the will, the general rule is that title to realty vests in the devisee, subject to the power to sell for testator's debts.' ").

11. *DiGiacobbe v. Sestak*, 743 A.2d 180 (Del. 1999).

to a Master's findings—both legal and factual—is *de novo*.[12]

### A. *Lovett's Exception*

Lovett takes exception to the Master's calculation of Mrs. Bernstein's elective share under the elective share statute, 12 Del. C. §§ 901–908. Specifically, Lovett argues that the Master erred in couching her analysis in terms of legislative intent when the elective share statute, according to Lovett, is unambiguous and commands a result contrary to the Master's ruling. Before addressing Lovett's exception, I first outline the Master's analysis, placing it contextually within the framework of Delaware's elective share statute. I then outline the parties' competing arguments. Finally, I determine that the elective share statute is in fact, as both parties urge, unambiguous and hold that the result obtained by the Master was the correct one, and therefore deny Lovett's exception.

### 1. *The Master's Determination Of Mrs. Bernstein's Elective Share Amount*

On April 30, 2008, Mrs. Bernstein petitioned to take her elective share to which she, as a surviving spouse, is entitled under 12 *Del. C.* § 901(a). The right to an elective share is a statutory right entitling the surviving spouse to take a statutorily prescribed portion of the decedent spouse's estate "rather than tak[e] the amount which the decedent had intended to pass to the surviving spouse by her will" or otherwise.[13] "The right to an elective share, and the method of calculating that share, is provided solely by statute." [14]

Under § 901(a), Mrs. Bernstein, as a surviving spouse, is entitled to one third of the "elective estate," "less the amount of all transfers to the surviving spouse by the decedent. . . ." [15] The elective estate "means the amount of the decedent's gross estate for federal estate tax purposes . . . [l]ess those deductions allowable under §§ 2053 and 2054 of the Internal Revenue Code of 1986. . . ." [16]

Section 901(a) must be read in conjunction with 12 Del. C. § 903(1), entitled "Transfers to surviving spouse by decedent," which provides in relevant part:

> The *value of the property transferred to the surviving spouse* by the decedent for purposes of § 901(a) of this title is an amount which equals the value of the property *derived from the decedent* by virtue of death. For purposes of this section:
>
> (1) Property derived from the decedent by virtue of death shall be:
>
> a. Property which is part of the decedent's estate which passes to the surviving spouse by testate or intestate succession and which has not been disclaimed or renounced. . . . [17]

---

**12.** *Id.* at 184.

**13.** *In re Estate of Schaeffer*, 2002 WL 31112198, at *1 (Del.Ch. Sept. 4, 2002).

**14.** *Id.*

**15.** 12 *Del. C.* § 901(a).

**16.** 12 *Del. C.* § 902(a)(1). Section 2053 of the Internal Revenue Code of 1986 allows deductions for funeral expenses, estate administration expenses, claims against the estate, and for unpaid mortgages or any other indebtedness in respect of any property owned by the decedent. 26 U.S.C. § 2053. Section 2054 deals with losses due to natural forces such as fires and storms and is not implicated here. 26 U.S.C. § 2054.

**17.** 12 *Del. C.* § 903(1) (emphasis added). The amended, and current, version of the elective share statute is inapplicable to Barry Bernstein's estate because the statutory changes effected by 76 Del. Laws 2007 c. 150 § 12 (2007) apply only to decedents dying on or after January 1, 2008. Barry Bernstein died on October 4, 2007.

Sections 901(a) and 903(1), read together, mean that if the value of the property transferred to the surviving spouse by virtue of the decedent spouse's death equals or exceeds the elective share amount to which the surviving spouse is entitled, the surviving spouse is entitled to nothing more because in such a case the elective share is deemed to have been satisfied. Finally, in order to facilitate the elective share calculation, 12 *Del. C.* § 902(b) commands the executrix of the estate to prepare and submit to the surviving spouse a Form 706 (the United States Estate Tax Return), "regardless of whether such form is required to be filed." [18]

Both parties presented expert testimony on the calculation of Mrs. Bernstein's elective share. Both experts relied on the same draft Form 706 prepared by Lovett's expert, agreed that the elective estate equaled $408,055.14,[19] and further agreed that the elective share, or one third the elective estate, equaled $136,018.38 "less the amount of all transfers to the surviving spouse by the decedent" as directed by 12 *Del. C.* § 901(a).[20] It is on this last point that the experts' disagreement centered, and in particular their treatment of Mrs. Bernstein's one third interest in the New Jersey Condominium, previously owned by Mr. Bernstein but transferred to Mrs. Bernstein by virtue of the codicil to his will.

Lovett's expert, Barbara Snapp Danberg, Esquire, concluded that Mrs. Bernstein received transfers from Mr. Bernstein in an amount totaling $139,240.23. This was comprised of the one third interest in the New Jersey Condominium,

which Danberg valued at $105,000 or one third the entire Condominium's appraisal value, insurance proceeds, and property that Mrs. Bernstein owned jointly with Mr. Bernstein. Thus, because Danberg's calculation of the "amount of transfers to the surviving spouse by the decedent" under 12 *Del. C.* § 901(a), $139,240.23, exceeded one third of the elective estate, $136,018.38, Danberg concluded that Mrs. Bernstein's elective share was satisfied, and that Mrs. Bernstein was entitled to nothing more than what she already received by virtue of Mr. Bernstein's death.

Mrs. Bernstein's expert, Gregory J. Weinig, Esquire, reached a contrary conclusion. Weinig reasoned that if Mrs. Bernstein were to receive nothing from the sale of the New Jersey Condominium after the sale proceeds were applied to the estate's debts, including the remaining mortgage balance on the New Jersey Condominium, the "value of the property [in the form of the one third interest] derived from the decedent by virtue of death," under 12 *Del. C.* § 903, would be zero. That being the case, when Weinig calculated the "amount of transfers to the surviving spouse by decedent" to be subtracted from one third of the elective estate, he obtained a figure $105,000 less than Danberg did. According to Weinig, then, Mrs. Bernstein is entitled to an elective share in the amount of $101,778.15.[21]

The Master based her calculation of the elective share amount on both the elective share statute and Form 706. As part of Schedule A to Form 706, the executrix

---

18. 12 *Del. C.* § 902(b).

19. The total gross estate equaled $545,771.23. After allowable deductions under 26 U.S.C. § 2053, the elective estate equals $408,055.14. Resp. Op. Br. Ex. 1 (Form 706 at 3).

20. 12 *Del. C.* § 901(a).

21. This amount is obtained by subtracting the value of the transfers other than the one third interest in the New Jersey Condominium to Mrs. Bernstein ($34,240.23) from one third the elective estate ($136,018.38).

must list the full value of all the decedent's real estate interests at the time of death, notwithstanding any debts or mortgages claimed against that real estate.[22] Claims against real property, such as unpaid mortgages, for which the decedent was personally liable, along with other debts of the decedent, funeral expenses, and estate administration costs are to be entered on Schedules J and K and deducted from the full property values listed on Schedule A. The resulting value is the elective estate, or in this case, $408,055.14.[23] The executrix must also list the value of the bequests and other transfers to the surviving spouse on Schedule M, with one important caveat: the value of the bequeathed property must reflect the mortgages, encumbrances, or other obligations of the decedent with respect to that property. Specifically, Schedule M provides that "[y]ou should not list on Schedule M: ... The full value of a property interest that passes to the surviving spouse subject to a mortgage or other encumbrance or an obligation of the surviving spouse. *Include on Schedule M only the net value of the interest after*

*reducing it by the amount of the mortgage and other debt.*"[24] In this case, contrary to the printed instructions on Schedule M, Danberg listed the entire one third interest in the New Jersey Condominium worth $105,000 and did not offset against that amount the balance of the mortgage for which Mr. Bernstein was personally liable, or $36,295.24.[25] Nor was the value of the one third interest reduced by the other debts and expenses of the estate, totaling $101,420.85, which per the New Jersey court order,[26] were payable out of one third the net proceeds from the sale of the New Jersey Condominium in accordance with either an agreement among the parties or an order entered by this court directing the disposition of such proceeds.[27]

The Master observed that if the instructions on Schedule M had been followed, and the value of Mrs. Bernstein's one third interest in the New Jersey Condominium was properly reduced by the debts and claims against it, the value of that one third interest "would have been reduced to

22. Form 706 Schedule A at 5 ("If any item of real estate is subject to a mortgage for which the decedent's estate is liable; that is, if the indebtedness may be charged against other property of the estate that is not subject to that mortgage, or if the decedent was personally liable for that mortgage, *you must report the full value of the property in the value column.* Enter the amount of the mortgage under 'Description' of this schedule. The unpaid amount of the mortgage may be deducted on Schedule K.") (emphasis added).

23. Form 706 at 3.

24. Form 706 Schedule M at 26 (emphasis added).

25. This amount is obtained by dividing the total outstanding mortgage balance, $108,815.72, by three.

26. *In the Matter of the Estate of Barry S. Bernstein*, Docket No. MON P–342–08 S# 216879 (ORDER).

27. *See In re Harris' Estate*, 44 A.2d 18, 19 (Del.Super. Ct. & Orphan's Ct.1945) (citing *Brennan v. Wilmington Trust Co.*, 32 Del. 482, 126 A. 42 (Del.Super.1924)) (noting that it is settled Delaware law that where the decedent's estate has insufficient assets to cover its debts that bequeathed property can be called upon to satisfy those debts); *see also In re Spicer's Estate*, 120 A. 90, 91 (Del. Orphan's Ct.1923) ("The rule seems to be now well established ... that upon the death of a person his personal property vests in his executor or administrator, who ... takes such personal property ... in trust for the payment of the debts of the deceased...."). As noted, although the parties do not dispute the applicability of Delaware law to Mr. Bernstein's estate, New Jersey law tracks Delaware. *See supra*, note 10 and accompanying text.

zero because the mortgage, debts and expenses listed on Schedules J and K that are to be paid out of that property interest exceed $105,000."[28] The Master reasoned that "[i]f Mrs. Bernstein receives nothing from the sale of her real property interest after payment of decedent's debts and estate expenses, then Danberg's method of calculation would have the effect of reducing both the gross elective estate and the remaining elective share to the detriment of the surviving spouse."[29] In other words, the Master concluded that "[i]f there are no proceeds remaining [from the sale of the New Jersey Condominium] after the debts and estate expenses are paid, then the value of the surviving spouse's real estate interest derived by virtue of the decedent's death shall be zero."[30] In that case, Mrs. Bernstein's elective share would be in an amount equal to one third the elective estate less the value of the other transfers to Mrs. Bernstein as a result of Mr. Bernstein's death, totaling $34,240.33.[31] For the mathematically inclined, I offer the following numerical summary of the calculation performed by the Master:

> One Third Of The Elective Estate: $136,018.38
> Less Transfers To Mrs. Bernstein: $ 34,240.23
> Elective Share Amount: $101,778.15

The Master's calculation turns out to have been made on the correct assumption that after the mortgage and other debts of the estate are paid, Mrs. Bernstein will receive nothing for her one third interest in the New Jersey Condominium.

### 2. The Parties' Arguments With Respect To Lovett's Exception

Lovett takes exception to the Master's calculation of the elective share. Specifically, Lovett takes issue with the Master's use of the phrase "[i]n order to carry out the legislative goal of ensuring that a surviving spouse receives a fair share of the deceased spouse's estate"[32] that preceded her calculation of the elective share amount as running afoul of her duty to apply the clear "legislative mandate of Chapter 9 of Title 12 of the Delaware Code."[33] To that end, Lovett argues that the elective share statute and the instructions on Form 706 are unambiguous and therefore any analysis anchored in legislative intent or purpose constitutes impermissible judicial legislating. Simply put, Lovett argues that for purposes of calculating the "value of the property transferred" to Mrs. Bernstein under 12 *Del. C.* § 903, the one third interest in the New Jersey Condominium is equal to one third the appraisal value of the entire New Jersey Condominium at the date of Mr. Bernstein's death, or $105,000.[34]

In support of that position, Lovett attacks the Master's characterization of the one third interest in the New Jersey Condominium as being "immediately defeasible."[35] Despite the fact that the New Jersey Condominium was at all times subject to the unpaid mortgage, and despite the fact that Mr. Bernstein died leaving a testamentary estate insufficient to cover his debts and estate administration expenses, Lovett argues that at the moment

---

**28.** Master's Report at 18.

**29.** *Id.* at 11.

**30.** *Id.* at 12.

**31.** This amount is the sum of the insurance proceeds ($5,117.93) and one half the value of the property Mrs. Bernstein owned jointly

with Mr. Bernstein ($29,122.30). Form 706 Schedules E and D.

**32.** Master's Report at 12.

**33.** Resp. Op. Br. at 4.

**34.** *Id.* at 8.

**35.** Master's Report at 8.

Mr. Bernstein died on October 4, 2007, title to the one third interest in the New Jersey Condominium, with an appraisal value of $105,000, vested in Mrs. Bernstein. And, because Lovett did not file her petition in the New Jersey court to sell the New Jersey Condominium until November 2008, and further did not put the Condominium up for sale until March 2009, Mrs. Bernstein's interest in the New Jersey Condominium was not immediately defeasible, but was instead "defeasible if, and only if, the property in fact was required to be sold." [36]

In addition, says Lovett, Mrs. Bernstein filed her petition for an elective share in which she reaffirmed that she "does not waive or renounce any other rights or interest she may have as surviving spouse of the decedent, under the decedent's Will...." [37] And, as noted, 12 *Del. C.* § 903(1) [38] includes as part of "transfers to the surviving spouse by decedent," [39] "[p]roperty which is part of the decedent's estate which passes to the surviving spouse by testate or intestate succession and which has not been disclaimed or renounced...." [40] Thus, argues Lovett, Mrs. Bernstein "was on notice that a disclaimer of the real estate devised to her was available to her and could have been timely filed." [41] Having chosen not to do so, the full appraisal value of the one third interest in the New Jersey Condominium passed to Mrs. Bernstein under the will and the fact that as a result of the mortgage and forced sale Mrs. Bernstein will receive nothing for that interest is of no moment according to Lovett. If Mrs. Bernstein knew what was good for her, she would have somehow had the foresight to disclaim the mortgage and debt encumbered one third interest in the New Jersey Condominium before Mr. Bernstein died.

For her part, Mrs. Bernstein agrees with Lovett that the elective share statute is unambiguous. But Mrs. Bernstein says that the statute's plain terms support the Master's calculation of the elective share. Mrs. Bernstein defends the Master's characterization of the one third interest in the New Jersey Condominium as an "immediately defeasible title" and argues that Lovett's contention otherwise, based on the temporal sequence of the filing of the elective share petition and later petition to sell real estate, is immaterial in light of the fact that at the moment Mr. Bernstein died and his testamentary estate was administered, his estate had insufficient assets to cover his estate's liabilities. [42] Thus, says Mrs. Bernstein, the one third interest in the New Jersey Condominium was subject to defeasance immediately upon receipt, and because one third of the sale proceeds from the New Jersey Condominium were insufficient to cover the estate's debts and expenses, Mrs. Bernstein in effect received nothing from her property interest in the New Jersey Condominium. That being the case, the full appraised value of $105,000 cannot properly be considered when calculating the value Mrs. Bernstein received via transfers from the decedent and the Master correctly concluded as much.

36. Resp. Op. Br. at 10.

37. Resp. Tr. Ex. 3 (Mrs. Bernstein's elective share petition) ¶ 7.

38. That is, the previous version of 12 Del. C. § 903 that is applicable to Mr. Bernstein's estate.

39. 12 *Del. C.* § 901(a).

40. 12 *Del. C.* § 903(1).

41. Resp. Op. Br. at 12.

42. Master's Report at 8.

3. *The Master's Calculation Of The Elective Share Was Proper Because The Value Of The One Third Interest In The New Jersey Condominium Transferred To Mrs. Bernstein Must Take Into Account The Fact That The One Third Interest Was Encumbered*

■ The question raised by Lovett's exception, identical to the one that confronted the Master, is how this court should value Mrs. Bernstein's one third interest in the New Jersey Condominium for purposes of calculating the "value," under 12 *Del. C.* § 903(1), "of the property *transferred to the surviving spouse by the decedent* for purposes of § 901(a)." [43] Section 901(a), as noted, provides that the elective share amount is calculated by subtracting from one third the elective estate an amount equal to "all transfers to the surviving spouse by the decedent." [44] I emphasize the above portion of § 903(1) with purpose because it makes clear to me that what is important for purposes of calculating the elective share amount is not the value of the property as measured in a vacuum, free and clear of any encumbrances or claims against that property, but is instead the value of the property that is *transferred to the surviving spouse.* Put differently, if a surviving spouse is bequeathed a parcel of real property, but the executrix of the estate, as here, has the power to claw that property back in order to sell it and apply the proceeds to satisfy the debts of the estate,[45] the measure of the value *transferred* to the surviving spouse cannot properly be viewed as the full appraisal value of the property for the simple reason that in such a situation, the full appraisal value has not been transferred to the surviving spouse. Instead, in that situation, the value transferred to the surviving spouse is what is left over, if anything, after the property has been sold and the debts of the estate have been satisfied.

For her part, Lovett would have me conclude that despite the fact that after the sale of Mrs. Bernstein's one third interest in the New Jersey Condominium she will receive nothing once the proceeds are applied to the mortgage and other debts of the estate, Mrs. Bernstein still will have received property with a "value" of $105,000 for purposes of satisfying her elective share. But Lovett's argument ignores the reality that after the sale proceeds are applied to Mr. Bernstein's estate's debts, *nothing* will have been "transferred" to Mrs. Bernstein in the sense that she actually gets something of value free and clear of Lovett's right to claw it back.

Even were that not known at the moment Mr. Bernstein died and Mrs. Bernstein became the title bearer to the one third interest in the New Jersey Condominium, at no time could the value of that one third interest transferred to Mrs. Bernstein have been the simple appraisal value of a one third interest in the New Jersey Condominium unencumbered by a mortgage. At the very least, any estimate of what Mrs. Bernstein received at the time of Mr. Bernstein's death had to be

---

43. 12 *Del. C.* § 903(1) (emphasis added).

44. 12 *Del. C.* § 901(a).

45. I note here that the parties' disagreement over the Master's characterization of the one third interest in the New Jersey Condominium as "immediately defeasible" is more one of semantics than of substance. It is settled law in this state that beneficiaries take real property interests under a will "immediately upon the death of the testator *subject to be divested if it be necessary to sell it for the payment of debts of the deceased.*" *In the Matter of The Estate of Sexton,* 2007 WL 2303915, at *1 (Del.Ch. Aug. 8, 2007) (citing *In re Harris' Estate,* 44 A.2d 18, 19 (Del.Super. Ct. & Orphan's Ct.1945)) (emphasis added).

reduced by the mortgage of Mr. Bernstein.[46] But because what she received was subject further to the debts of Mr. Bernstein's estate,[47] it was worth even less, in fact equal to a song by Elvis Costello.[48] That is, as an economic matter, even if appraised as of the date of Mr. Bernstein's death, the measure of the value *received* by Mrs. Bernstein had to take into account that her interest in the New Jersey Condominium was subject to sale to cover the estate's debts, which at the time of Mr. Bernstein's death were known to exceed the estate's capacity to pay them. In other words, at that time, it was already discernible that the estate would require whatever value could be yielded from a sale of Mrs. Bernstein's one third interest in the New Jersey Condominium to pay the estate's debts.[49] In sum, getting a one third interest in a property encumbered by a mortgage and debts of an estate is not equal to receiving a one third interest in that property, not so encumbered. Again, for purposes of § 903(1), what matters is the *value* of the property *transferred to the surviving spouse.* Lovett is confusing that with the unencumbered value of the New Jersey Condominium measured by a date-of-death appraisal.

The Master grasped that reality and her conclusion that the full appraised value of one third of the New Jersey Condominium cannot be properly considered to have been transferred to Mrs. Bernstein was correct. The elective share statute clearly requires the court, in calculating the elective share, to consider only the value of the property the surviving spouse received—i.e., what the property was worth in the surviving spouse's hands. As counsel for Lovett admitted at oral argument, if a surviving spouse was bequeathed a Ferarri appraised at $125,000, but was subject to a loan balance of $100,000, the value transferred to the surviving spouse would not be $125,000, but at most $25,000.[50]

■ In reaching the conclusion that the Master's calculation of the elective share was correct, I note that the result obtained by the Master sensibly implements the clear purpose of the elective share statute as reflected by its own language, which as the Master discerned is to "ensur[e] that a surviving spouse receives a fair share of the deceased spouse's estate."[51] Were it otherwise, as Lovett advocates, a decedent spouse could disinherit his surviving spouse, and eviscerate any elective share, by simply bequeathing to her a highly leveraged piece of property with a high appraisal value. Finally, although Lovett hotly contests the propriety of the Master's alleged recourse to legislative intent in the face of an unambiguous statute, the Master's recognition of the purpose of the elective share statute—a purpose clearly

---

**46.** *See, e.g., Seals v. Chadwick,* 45 A. 718, 720 (Del.1900) ("It is well settled in this state that a mortgage is merely a security for the payment of a debt.... The estate of the mortgagor in the land remains in him, and passes to his assignee, devisee, or heir, *subject to the lien of the mortgage.*") (emphasis added).

**47.** *In re Harris' Estate,* 44 A.2d 18, 19 (Del.Super. Ct. & Orphan's Ct.1945) (citing *Brennan v. Wilmington Trust Co.,* 32 Del. 482, 126 A. 42 (Del.Super.1924)).

**48.** ELVIS COSTELLO, *Less Than Zero on* MY AIM IS TRUE (Columbia 1977).

**49.** *See* Form 706 at 3 (showing that Mr. Bernstein's estate had debts, including Mr. Bernstein's liability for the unpaid mortgage on the New Jersey Condominium and estimated estate administration expenses, in the amount of $137,716.09).

**50.** This is because in order to reap $25,000 from a sale, the sale of the Ferarri would have to be completely costless, an unlikely scenario.

**51.** Master's Report at 12.

evident on the statute's face—[52] was not only proper, but required.[53]

Lovett's final argument is that the elective share calculation would be much different had Mrs. Bernstein disclaimed the one third interest in the New Jersey Condominium. From that, Lovett argues that because Mrs. Bernstein chose not to disclaim, she should be forced to live with her decision to receive the mortgage and debt encumbered one third interest in the New Jersey Condominium with an economic value, in Lovett's idiosyncratic and self-serving view, of $105,000. But that argument is beside the point. The fact of the matter is that Mrs. Bernstein *did not* disclaim that interest nor was she required by law to do so in order to have her choice of an elective share, and the interest must therefore be valued. That does nothing, however, to change the reality that the value of what was transferred to Mrs. Bernstein in the form of the one third interest was nothing. For a party who argues that a court should not engage in the practice of reading between the lines of an unambiguous statute, it is a tad inconsistent for Lovett to argue in essence that the disclaimer language found in § 903(1) impliedly puts the onus on the surviving spouse to engage in an accounting exercise before filing for her elective share. The plain language of § 903(1) imposes no such duty, and merely excludes from the calculation of the "value of the property transferred to the surviving spouse," and in turn from the elective share amount, property which has been disclaimed or renounced by the surviving spouse.

Finally, my conclusion is also consistent with the instructions on Schedule M to Form 706, which, as the Master noted, requires that the full value of bequeathed property to a surviving spouse be reduced by the mortgages, debts, or other encumbrances against the property. Lovett's reading of § 903 is premised on ignoring the specific instructions on Schedule M to Form 706. Lovett responds that "Sched-

---

**52.** The obvious purpose of the elective share statute, as recognized by the Master, is to prevent a dying spouse from disinheriting his surviving spouse by virtue of his will or otherwise. To that end, the elective share statute gives the surviving spouse a "right of election" to choose whether to accept what was bequeathed to her under her decedent spouse's will, or file a petition to take a statutorily prescribed minimum from the decedent spouse's estate, i.e. an elective share. 12 *Del. C.* § 901(a). The General Assembly went so far as to empower this court to require beneficiaries under the deceased spouse's will and other recipients of the so-called contributing estate to surrender proportionately that amount of value received from the decedent necessary to compensate the surviving spouse for her elective share in cases where what the surviving spouse receives under the will, if anything, is insufficient for that purpose. 12 *Del. C.* § 908(a)-(b).

**53.** *See Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985) ("To apply a statute the fundamental rule is to ascertain and give effect to the intent of the legislature. 73 Am.Jur.2d *Statutes* § 146 (1976)."); *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del.1982) ("It is fundamental that the Courts ascertain and give effect to the intent of the General Assembly as clearly expressed in the language of a statute. . . . [W]hen no ambiguity exists, and the intent is clear from the language of the statute, there is no room for statutory interpretation or construction.") (internal citations omitted); *Magill v. North American Refractories Co.*, 128 A.2d 233, 236 (Del.1956) (quoting *Darling Apt. Co. v. Springer*, 22 A.2d 397, 402 (Del.1941)) ("That clear and unambiguous language in a statute is ordinarily conclusive evidence of legislative intent is an elementary rule. . . . 'Courts are not compelled to follow the letter of a statute when it departs from the true intent and purpose and to conclusions inconsistent with the general purpose of the act. . . . [A]nd they are obliged to give the language of a statute a plain and sensible meaning having in mind its purpose and intent.' ") (emphasis added).

ule M of Form 706 neither enters into the calculation of the elective estate nor of the elective share."[54] But 12 Del. C. § 902(b) requires the preparation of a Form 706 and the provision of it to the surviving spouse in every instance where a petition for an elective share has been filed. The most obvious purpose of that statutory requirement is to facilitate the calculation of both the elective estate and the elective share amount. Indeed, § 902 is entitled "Elective estate defined."[55]

## B. Mrs. Bernstein's Exception

■ Mrs. Bernstein takes exception to the Master's ruling that Lovett is not personally liable for the entire elective share amount to which Mrs. Bernstein is entitled. Instead, the Master concluded, in accordance with 12 *Del. C.* § 908, that both Lovett and her late brother Hank, as the only two recipients of the contributing estate, shall each be personally liable in equal shares for Mrs. Bernstein's elective share. Mrs. Bernstein maintains that this conclusion is wrong because Lovett, being both the executrix and a recipient of the contributing estate, breached her fiduciary duty owed to Mrs. Bernstein and should be personally liable for the entire amount of the elective share "because she failed to act on behalf of all beneficiaries of the estate when she distributed the TOD [A]ccounts to herself and her brother."[56]

The Master based her ruling on 12 Del. C. § 908, aptly entitled "Liability for elective share." Section 908(a) provides that "liability for the amount of the elective share shall be apportioned among the recipients of 'the decedent's contributing estate'...."[57] The Master concluded that Lovett and her brother Hank, having received the four TOD Accounts in equal shares that made up the contributing estate, must be liable to Mrs. Bernstein for her elective share "in the proportion, as near as may be, that the value of the property of each such recipient bears to the total value of the property received by all such recipients interested in the contributing estate."[58] In other words, the Master concluded that this case represented the typical one in which the recipients of the contributing estate shall be liable to the electing spouse in proportion to their interests in the contributing estate.[59] The Master reasoned that the TOD Accounts, having passed by operation of law at Mr. Bernstein's death and without any action on the part of Lovett or Hank, were never part of Mr. Bernstein's testamentary estate.[60] Because the TOD Accounts were never a part of Mr. Bernstein's testamentary estate, title to those accounts never vested in Lovett *as executrix,* and as a result Lovett had no obligation to administer or distribute them as estate assets.[61]

54. Resp. Rep. Br. at 6.

55. 12 *Del. C.* § 902.

56. Master's Report at 14.

57. 12 *Del. C.* § 908(a). The contributing estate "consists of only that portion of the elective estate of which the decedent was the sole owner at death and which was not transferred or deemed transferred to a surviving spouse by the decedent as described in § 903(1) of this title." 12 *Del. C.* § 908(b).

58. 12 *Del. C.* § 908(a).

59. In this case, because Lovett and Hank received the TOD Accounts in equal shares,

each should be liable for one half of the elective share. *See* Master's Report at 14.

60. *See* Master's Report at 14 (quoting 12 *Del. C.* § 809(a)) ("A transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and this chapter and is not testamentary.").

61. *See generally Boyer v. Cole,* 143 A. 489, 490 (Del. Ch.1927) (noting that an executrix acts as a fiduciary in distributing estate assets to which the executrix "had legal title"); *In re Spicer's Estate,* 120 A. 90, 91 (Del. Orphan's

That being the case, reasoned the Master, there could be no breach of fiduciary duty by Lovett as executrix, as Mrs. Bernstein charges, because the TOD Accounts were not assets over which Lovett had a responsibility to exercise care for the benefit of all estate beneficiaries, including Mrs. Bernstein.

Mrs. Bernstein's exception is denied because Master Ayvazian's reasoning was entirely proper as a matter of fact and law.

## IV. *Conclusion*

For the foregoing reasons, both exceptions are denied. In calculating Mrs. Bernstein's elective share amount, the "value of the [one third interest in the New Jersey Condominium] transferred to the surviving spouse" under 12 Del. C. § 903(1) shall be zero. Finally, Lovett and her late brother Hank's estate, as recipients of the contributing estate, shall be liable for the satisfaction of Mrs. Bernstein's elective share in accordance with 12 Del. C. § 908. The parties shall confer and submit within two weeks a final order memorializing the calculation and satisfaction of Mrs. Bernstein's elective share amount consistent with this opinion.

Ct.1923) ("The rule seems to be now well established ... that upon the death of a person his personal property vests in his executor or administrator, who, for the time being, succeeds to all rights and responsibilities of the decedent in reference thereto. He takes such personal property, however, in trust for the payment of the debts of the deceased, and the distribution of the remainder to his heirs.... He is not held responsible as an insurer of goods and chattels which come into his possession in his fiduciary capacity, ... [but] he must at all times use ordinary care, prudence, skill and diligence....").