COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: February 5, 2024
Date Submitted: September 6, 2023

Robert C. McDonald, Esquire
Silverman, McDonald & Friedman
1523 Concord Pike, Suite 400
Wilmington, DE 19803

Brian J. Ferry, Esquire
Ferry Joseph, P.A.
1521 Concord Pike, Suite 202
Wilmington, DE 19802

Re: *Carl Wanamaker v. Sandra Wanamaker,*
C.A. No. 2019-0920-LM

Dear Counsel:

This case arises from a dispute over the administration of the estates of the parties' parents. The Petitioner seeks to have the Respondent removed as the personal representative of their father's estate and wants sanctions imposed against the Respondent for her conduct.

After reviewing the evidence from trial, I find the Respondent should be removed as the personal representative of both parents' estates. Although Respondent has not neglected all of her duties, she has breached the fiduciary duties owed in her role as personal representative.

## I.      Background[1]

This case arises from the administration of the estates of Carl E. Wanamaker, Sr. and Sarah Wanamaker (together, the "Decedents").  On April 26, 2019, Carl Wanamaker, Sr. died intestate in New Castle County, Delaware.[2]  A little over a month later, his spouse, Sarah Wanamaker also died intestate on May 29, 2019.[3] The Decedents left behind two beneficiaries, Carl Wanamaker, Jr. (the "Petitioner") and Sandra Wanamaker (the "Respondent").[4]

On June 27, 2019, the Respondent filed and was appointed as the personal representative of Carl Wanamaker, Sr.'s estate.[5] On July 29, 2019, the Respondent was also appointed as the personal representative of the estate of Sarah Wanamaker.[6]

Throughout her time as personal representative, issues arose between the Respondent and the Petitioner. On November 15, 2019, less than five months after

---

[1] The facts in this report reflect my findings based on the record developed at trial on June 6, 2023.  *See* Docket Item ("D.I.") 35.  I grant the evidence the weight and credibility I find it deserves.  Citations to the trial transcripts are in the form "Tr. #."  The parties' jointly submitted exhibits are cited as "JX __."  Citations to the Register of Wills docket are cited as "ROW" D.I.#.

[2] D.I. 34.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] JX G at 1.

she was appointed personal representative, the Respondent filed this action to remove her as the personal representative of the Estate of Carl Wanamaker pursuant to 12. Del. C. § 1541.[7]

### A.    The Property

Prior to their deaths, the Decedents owned real property at 5894 Summit Bridge Road, Townsend, Delaware (the "Property"), property at 645 South Street, Townsend, Delaware, and property located at 649 South Street in Townsend, Delaware (collectively the "Townsend lots").  It is undisputed that the Respondent has resided at the Property since the date of the Decedents' deaths.[8]  However, the Respondent testified that she moved into the Property before the Decedents' deaths, around summer 2018,[9] while the Petitioner maintains that she moved in after the Decedents' deaths.[10]  The Respondent also testified that she has lived alone at the Property since her parents died but has allowed the Property to be listed as the home address for her grandchildren to allow them to attend school in  Appoquinimink School District, although they don't reside with her in the home.[11]

---

[7] D.I. 1.

[8] D.I. 34.

[9] Tr. 70:11-16.

[10] Tr. 154:20-157:16.

[11] Tr. 17:15-19:13.

While the Respondent was living in the Property, some issues arose which required repairs. At the end of 2019, the Property suffered from a sewer system backup causing damages to several rooms.[12] This damage required extensive repairs, including pipe repairs and carpet removal.[13] The well on the Property needed to be partially replaced.[14] The Respondent also had a new hot water heater and boiler system installed.[15] All of these repairs and improvements were paid for from the assets of the Decedents' estates.[16]

The Petitioner attempted to visit the property after the death of his mother. On one occasion when the Petitioner visited the Property, the Respondent testified that he and a friend harassed her.[17] However, the Petitioner indicates he demanded his sister to stop driving their parent's vehicle, which was an estate asset.[18] The Respondent filed for a protection from abuse order ("PFA") against the Petitioner due to this incident.[19] Although there was a temporary period where the Respondent

---

[12] Tr. 25:4-14.

[13] Tr. 25:17-20.

[14] Tr. 28:3-15.

[15] Tr. 29:24-30:9.

[16] Tr. 27:19-21; Tr. 30:12-13.

[17] Tr. 67:9-68:2.

[18] Tr. 161:10-162:6.

[19] Tr. 31:19-32:5; JX B.

could not go on the property due to the PFA[20], the PFA was ultimately dismissed in December 2019.[21] The Petitioner testified that he knew if he went back to the property, she would call the cops again and attempt to get another PFA against him.[22]

### B.    The Vehicles

The main assets of the Decedents' estates were a collection of vehicles and valuable license plates.  Among these vehicles, was a 1996 Mercedes Benz (the "Mercedes").[23]  The Decedents used this as their daily car, and the Respondent continued to use it in that manner after their death. Respondent testified that she stopped using the Mercedes daily a couple of years ago, but occasionally uses it if she has maintenance trouble with her vehicle, which occurred as recently as one week before the trial.[24]  In order to re-register the Mercedes, the Respondent had it titled solely in her name, despite acknowledging the Petitioner's right to a share in the Mercedes.[25]

---

[20] JX B.

[21] *Id*.; Tr. 162:12-22; JX B.

[22] Tr. 162:23-163:3.

[23] JX F.

[24] Tr. 20:2-21:11.

[25] Tr. 22:9-23.

The Respondent worked to sell some of the Decedents' other vehicles. The Respondent had an appraisal of the vehicles performed by Beach Bound Auto.[26] The Respondent sold the Decedents' 1958 Mercedes Benz 220S cabriolet, 1975 Chevrolet Caprice, 1935 Ford Model 31, and 1926 Ford Model T.[27] At trial, the Respondent testified that she could not recall the values received for these vehicles.[28] The Respondent also testified that the Decedents' 1982 Mercedes Benz 380SL Roadster, 1993 Chevrolet Caprice, and 1990 Ford F150 remain in the yard at the Property.[29] The Respondent has also retained two low numbered license plates, numbered 899 and 1251.[30] At trial, she testified that the current balance of the Decedents' estate account is approximately $45,000.00,[31] which appears to be significantly lower than the appraised value of the sold vehicles.[32]

---

[26] JX I.

[27] Tr. 52:24-54:21.

[28] Tr. 53:3-8.

[29] Tr. 55:2-56:5.

[30] Tr. 56:12-20.

[31] Tr. 57:15-22.

[32] JX J.

### C. The Administration

### 1. Estate of Carl Wanamaker Sr.

On June 27, 2019, the Respondent filed and was appointed as the personal representative of Carl Wanamaker, Sr.'s estate.[33] In accordance with the letters of administration, the inventory was due on or before August 31, 2019 with the accounting due by May 31, 2020.[34] The Respondent filed an Inventory for the Estate of Carl Wanamaker Sr. on December 11, 2019[35] after requesting a 90-day extension on September 24, 2019.[36] On June 26, 2020, approximately one month after the accounting was due, Respondent requested a 90-day extension to file the accounting.[37] To date, no accounting has been filed for the Estate of Carl Wannamaker Sr.

---

[33] D.I. 34.

[34] *In the Matter of Carl E. Wanamaker Sr.,* ROW 172297 D.I. 4; Filings with the Register of Wills are subject to judicial notice. *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) (citing 12 *Del. C.* § 2501; Del. R. Evid. 202(d)(1)(C)).

[35] D.I. 34; JX E.

[36] ROW Folio 172297 AF, D.I. 10.

[37] ROW Folio 172297 AF, D.I.. 15.

## 2.  Estate of Sarah Wanamaker

On July 29, 2019, the Respondent was appointed as the personal representative of the estate of Sarah Wanamaker.[38] The letters of administration required the inventory to be filed by October 29, 2019 and the accounting to be filed before July 29, 2020.[39]  On September 24, 2019, Respondent was granted a 90-day extension to file the inventory.[40]  With the extension, the inventory was now due on January 29, 2020.[41]  On March 9, 2020, a little over five weeks after the inventory was due, Respondent filed the inventory with the Register of Wills.[42]  She subsequently filed an amended inventory on September 17, 2020.[43]  On June 5, 2020, The Register of Wills sent a reminder letter to the Respondent that the accounting was due on July 29, 2020.[44] To date, no accounting has been filed, nor has an extension been requested.

---

[38] JX G at 1.

[39] *In the Matter of Sarah Wanamaker,* ROW 172445 AF, D.I. 3.

[40] ROW Folio 172445 AF, D.I. 6.

[41] *Id*.

[42] ROW Folio 172445 AF, D.I. 8.

[43] JX G.; ROW Folio 172445 AF, D.I. 11.

[44] ROW Folio 172445 AF, D.I. 10.

## II.    Analysis

### A.    Standing

This Petition seeks to have the Respondent removed as personal representative of the Estate of Carl Emory Wanamaker Sr.[45] When Mr. Wanamaker passed away intestate, his assets transferred to his surviving spouse under the laws of intestate succession. However, a little over a month later, Mrs. Sarah Wanamaker also passed away. By law, those assets would pass to the surviving children, the Petitioner and Respondent. At trial, the Court inquired about whether this litigation should have been filed under the estate of Sarah Wanamaker rather than under the estate of Carl Wanamaker Sr.[46] Both parties acknowledged that the assets were identical.[47] In addition, the Respondent is the personal representative under both estates.

This action was originally filed on November 15, 2019, with the trial being held on June 6, 2023. At no point between the filing of this action and the trial, did the Respondent object to standing or request dismissal for potentially filing under the wrong case. With more than four years since the petition was filed, it would be

---

[45] D.I. 1.

[46] Tr. 101:3-103:19.

[47] *Id.*

inequitable to require the Petitioner to refile the case under the estate of Sarah Wanamaker and put on identical evidence. Moreover, because of the obvious overlap, I am going to consider the personal representative's actions, which are in question by the Petitioner, under both estates.

**B.      The Respondent breached her fiduciary duties of care and loyalty to the Decedents' estates.**

To prevail on a breach-of-fiduciary-duty claim, the Petitioner must demonstrate two elements: "(1) that a fiduciary duty existed and (2) that the defendant breached that duty."[48]  Personal representatives of an estate owe both a duty of care and a duty of loyalty to the estate.[49]  The personal representative's standard of care is judged by the standard of "ordinary care, prudence, skill and diligence" in carrying out the duties as a personal representative.[50]  The duty of loyalty requires the personal representative "to act, at all times, in the best interests of the estate."[51]

The Respondent breached her duty of care by failing to exercise reasonable care in the administration of the estate. Respondent indicated she has not yet filed

---

[48] *Heller v. Kiernan*, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002).

[49] *In re Est. of Newton*, 2023 WL 3144700, at *3 (Del. Ch. Apr. 28, 2023).

[50] *Est. of Chambers*, 2020 WL 3173032, at *2 (Del. Ch. June 12, 2020).

[51] *Id*.

accountings because of the pending litigation. Although litigation in these cases does not preclude the filing of an accounting and it is common practice to request a stay of the Register of Wills deadlines, such a request was not made.

Respondent also failed to exercise reasonable care by submitting inaccurate inventories. The Respondent testified that she took in stock dividend checks owed to Carl Sr., but these checks were not identified on the inventory, or the amended inventory for either of the Decedents.[52] Although she testified at trial that she believed she has the information, the Respondent failed to provide sufficient evidence that she kept records of expenditures from the estate account, or record specific amounts expended.

Notwithstanding the lack of accountings and accuracy of the inventories, Respondent's actions show a breach of her fiduciary duties even without the ability to analyze transactions on an accounting. The Respondent utilized estate assets for her personal benefit, breaching her duty of loyalty. Although her actions benefited the estate in that she made repairs to the Property, she sold the most valuable estate vehicles to fund repairs to maintain the home she lived in and had no intention of selling. All, but one, of the working vehicles were sold. She chose not to sell the

---

[52] Tr. 43:21-45:4.

Mercedes because she hoped to keep it as her second car. So, acting in her best interest, she decided not to treat it the same as the other valuable vehicles in working condition. She also continued to occasionally drive the Mercedes whenever it suited her.

Additionally, Respondent has turned the Summit Bridge Property, into her personal asset. She has not converted this into her sole name, but she has moved in, allowed her grandchildren to use the house as their address for school, and as previously mentioned, sold estate assets to keep the home habitable for herself and cover the carrying costs. Further, she testified that she has no intention of selling the home because she wants it to go to her grandkids.[53] Her testimony revealed that she wants to split the estate assets with her brother 50/50 but wants to "come to an agreement" on the Summit Bridge Property where she lives.[54] She believes she has a superior claim to the home because she has children, and grandchildren, while the Petitioner does not.[55] Although the idea of keeping a home in the family because that is what a parent would want[56], is not lost on me, the role of the fiduciary is to have

---

[53] Tr. 37:12-24 and Tr. 38:10-18.

[54] Tr. 124:14-22.

[55] Tr. 37:20-38:9.

[56] Tr. 38:16-18.

a duty of loyalty to the beneficiaries and not to the decedents undocumented wishes. Respondent's actions and feelings towards the Property continue to show the primary purpose of her actions are for her best interest, with her duties to the beneficiaries serving as her secondary purpose.

The Respondent further breach her duty of loyalty by converting an asset of the estate, the 1996 Mercedes Benz, into a personal asset. Although she explained her rationale for retitling the Mercedes in only her name, she was aware of her brother's interest in the car, but still decided to solely put it in her names. In both cases of the Property and the Mercedes, she acted in her personal interest, to the detriment of her fellow beneficiary. This is a clear breach of her duty of loyalty.

All these failures combine to show that the Respondent did not exercise sufficient care in her estate administration. The Respondent's sole priority in administering the estate, was to maintain the property she lived in, and the one vehicle she wanted to keep for herself.

### C. The Respondent should be removed as personal representative of the Decedents' estates under 12 *Del. C.* § 1541.

12 *Del. C.* § 1541 provides "[i]f an executor or administrator neglects official duties, the Court of Chancery may remove the executor or administrator from office." Amongst these official duties are those found in 12 *Del.C.* § 2301 (a): "Every executor or administrator shall render an account of their administration to

the Court of Chancery, in money, every year from the date of their letters until the estate is closed and a final account passed by the Court."

Here, it is clear and undisputed that the Respondent has failed to comply with the statutory requirement to carry out her official duties as the personal representative of the Decedents' estates. The estates have been open since 2019 and yet the Respondent has not filed a single accounting, and based on the evidence at trial, seems woefully unprepared to do so. Respondent asserts she has not filed an accounting due to the pending Court of Chancery litigation.[57] However, even if Respondent wanted to wait for the outcome of this litigation to file an accounting, doing so was detrimental to both the estate and her case. Without an accounting, or even records to present at the trial, I am unable to determine the expenditures and whether they were justified. Therefore, I recommended the Respondent be removed as the personal representative of the Decedents' estates.

### D. The Petitioner is not entitled to rental payments under 25 *Del. C.* § 702 as part of this estate action.

The Petition requests the Court to impose sanctions upon Respondent for her failure to properly administer the estates. Petitioner alludes to sanctions in the form of the Respondent paying her share of rent due to her possession of the property.

---

[57] D.I. 34

Delaware law provides that "if a co-tenant has exclusive possession of the property and ousts other co-tenants, then the rental value (representing the benefit received by the co-tenant having exclusive possession) may be set off against their share of the sale proceeds."[58]   However, under Delaware law, the property passed immediately to both parties in equal shares, so the Petitioner and the Respondent are co-owners of the Property as joint tenants.[59]  With the property no longer part of the estate[60],  I decline to make a determination on whether the Petitioner is entitled to the payment of rent for the Respondent's possession of the property. Such an analysis is more appropriate for a partition matter, or if the property is to be sold, and not the current estate dispute.[61]

---

[58] *Ponder v. Willey*, 2020 WL 6735715 at *3 (Del. Ch. Nov. 17, 2020).

[59] *See In re Estate of Morrell*, 1995 WL 783075, at *4 (Del. Ch. Dec. 26, 1995) ("[R]eal estate, at the death of a decedent, passes directly to the intestate heirs, if there is no will, and directly to the persons named in the will as the new owners, if there is a will.").

[60] *In re Harris' Estate*, 44 A.2d 18, 19 (Del. Orph. 1945). ("It is well settled in Delaware that the title to real estate descends to the heirs or vests in the devisees immediately upon the death of the testator subject to be divested if it be necessary to sell it for the payment of debts of the deceased.").

[61] *See Green v. Shockley,* 2022 WL 4589217, at *6 (Del. Ch. Sept. 30, 2022) (holding that the only appropriate method to collect rental income "is a partition action, not the Estate [matter].").

E.      **The Respondent's commission should be reduced.**

Commissions represent "compensation to the personal representative for [her] own services in collecting the assets, checking into and paying bills, and performing the various duties which may be necessary, and his trouble and [i]ncidental expenses incurred thereby."[62]  Per Court of Chancery Rule 192, "[c]ommissions of personal representatives, and fees of the attorneys who represent them, shall be allowed in a reasonable amount." Under 12 *Del. C.* § 2305(c), "[t]he Court of Chancery may reduce commissions and attorneys' fees if the accounts required to be filed by this chapter are not filed within the required time period."  As indicated above, the Respondent failed to file the accountings for the Decedents' estates with the Register of Wills and failed to request a stay or an extension of the requirement.  I recommend the Respondent not be permitted to take the full commission for her time as personal representative of the Decedents' estates and any commissions be reduced by 50%.

## III.    Conclusion

For the foregoing reasons, I recommend that the Respondent be removed as the personal representative of the Decedents' estates. If the Petitioner seeks to be appointed, he shall apply to through the Register of Wills within thirty days, or a

---

[62] *In re Whiteside*, 258 A.2d 279, 282 (Del. 1969).

neutral personal representative will be appointed. In addition, the Respondent shall file an accounting for all estate expenditures **within forty-five (45) days** of this order. If she fails to do so, a rule to show cause will be issued to her directing her to appear at a hearing and show cause why a judgment should not be entered against her. Furthermore, I recommend that the Respondent be prohibited from taking a full commission for her time as Personal Representative.

This is a final report under Court of Chancery Rule 143 and exceptions may be filed under Court of Chancery Rule 144.

**IT IS SO ORDERED.**

*/s/ Loren Mitchell*

Loren Mitchell

Magistrate in Chancery